# Richmond.

## SMITH v. LURTY.

### November 19, 1908

1. LOST INSTRUMENTS—*Muniments of Title—Proof Required.*—Courts of equity, in exercising their jurisdiction to set up a lost instrument which is to constitute a muniment of title, requires strong and conclusive proof of its former existence, its contents and its loss. In the case in judgment, the evidence clearly shows the execution and delivery to appellee of a deed conveying in fee the whole of a tract of land known as "St. Maur," and that the deed has been lost.

2. EVIDENCE—*Husband and Wife—Survivor of a Transaction Between Them.*—A widow is an incompetent witness to prove the loss of a deed alleged to have been executed and delivered to her by her husband during his lifetime.

3. LOST INSTRUMENTS—*Proof of Loss—Degree of Proof.*—Generally, the loss of an instrument can only be established by circumstantial evidence. Where the existence and contents of an alleged lost paper have been clearly proved, and there is nothing in the facts and circumstances of the case to suggest that the party seeking to have it set up could have any motive or object in alleging its loss, the same high degree of proof as to its loss ought not to be required as where this is not the case. The degree of proof of the loss depends upon the circumstances of the particular case, and the rule should be so applied as to promote the ends of justice and guard against fraud and imposition. The rule only requires that the loss shall be established with reasonable certainty in a case like the one in judgment.

Appeal from a decree of the Circuit Court of Rockingham county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*D. O. Dechert* and *E. B. Crawford,* for the appellant.

*Sipe & Harris* and *Conrad & Conrad,* for the appellee.

BUCHANAN, J., delivered the opinion of the court.

The object of this suit, which was brought by Mrs. Annie S. Lurty, the appellee, against Miss Susie Smith, the appellant, is to set up a deed alleged to have been executed and delivered to the appellee and afterwards lost, purloined, or destroyed.

Upon the hearing of the cause, there was a decree in favor of the complainant, granting her the relief prayed for. From that decree this appeal was allowed.

The error assigned in the petition for appeal to the action of the court in refusing to permit the appellant to file an amended answer, to more clearly deny the loss or destruction of the alleged deed, was properly abandoned, since the appellee concedes that the original answer was sufficient to put that question in issue.

The other assignments of error involve but one question, and that is, whether or not the case made by the pleadings and proof entitled the appellee to the relief prayed for and granted.

It appears that Warren S. Lurty, under whom both parties claim, intermarried with the appellee in December, 1898, and died in February, 1906, leaving a will in which the appellant was his chief devisee and legatee. The appellant claims the land in controversy under that will, and it is conceded that she is entitled to it unless the appellee became the owner of it under the deed which is sought to be set up in this case.

Courts of equity, in exercising their jurisdiction to set up a lost instrument which is to constitute a muniment of title, require strong and conclusive proof of its former existence, its loss and its contents. *Thomas* v. *Ribble,* 2 Va. Dec. 321, 24 S. E. 321; *Barley* v. *Byrd,* 97 Va. 316, 325, 28 S. E. 329; *Carter, &c.* v. *Wood, &c.,* 103 Va. 68, 71, 48 S. E. 553.

The evidence relied on to show the existence of the alleged conveyance consists of letters from Warren S. Lurty to the appellee before their marriage, the testimony of the scrivener who it is claimed prepared the deed, and the admissions of Captain Lurty to third parties that he had given the land to her.

A few months prior to Captain Lurty's marriage with the appellee, whose maiden name was Sheppard, he wrote to her, in anticipation of their approaching marriage, letters which contained, among other things, the following statements in reference to the execution of a deed to her.

In one he writes: "I will look this morning to see if I can find enough data in the clerk's office to make you a deed for all the broad acres of St. Maur. * * * "

In another he writes: "On Saturday I went to the clerk's office and after a long and laborious search I found and copied all the data necessary to make you a deed—this with the interlocks—which must remain under your control gives you posession of about 6,000 acres of land—and you own at least 800 acres of the best land on Dry river. * * * Monday, I employed Dr. Points to help me write your deed. I dictated and he wrote * * * . You can send it to Mr. J. S. Messerley, Clerk County Court Rockingham county, Harrisonburg, Virginia—and tell him to record it—tell him in estimating the tax to be paid he can look at the assessor's book for that district. * * * It is intended as a bridal gift * * * Latest. You see I have acknowledged and stamped your deed * * * "

In another he says: "By this time you are reading your deed of my gift to your manor, absolutely your own. No partners, no joint owners, nor survivors, a great mountain with none to divide or interfere. * * * I only employ Dr. P. because he was a splendid amanuensis, and it is hard to run the metes and bounds without some one to call them out * * * . You have as good a deed as the mind of man ever devised. I am able to give it without impairing my estate. It is valuable. I owe all to you. I know it ought to make you very happy. You must do just as you please about the time of recording it. The $1.00 stamp is the war tax."

In a letter of a later date he writes: "Well, now you have the highest proofs in your hand. My letter full of fervent love and demands that you should marry me.—The gift of the manor of St. Maur, not a mere promise, but the full and com-

plete deed in every particular is enough to convince any one
who knows me I am seriously in earnest and want you no
longer to doubt, for in doubts you show a lack of resolute love
confiding in me and my truth."

Dr. Points, who is referred to in these letters as aiding in
the preparation of a deed conveying the lands known as St.
Maur, to the appellee, testified that he had studied and prac-
ticed law, had been connected with the Federal and State
courts as clerk and commissioner; that in the summer or early
fall of the year 1898, Captain Lurty, whom he had known
since 1871, told him that he wished to convey his mountain
land to Miss Annie E. Sheppard, and requested the witness
to go to the clerk's office with and assist him in getting up the
necessary data to make the deed; that he did so, and after
getting the data from the clerk's office, he returned to Captain
Lurty's office and wrote a deed conveying the land up at St.
Maur to Miss Sheppard; that he did not remember the charac-
ter of said lands, except that there was a considerable acreage
in one of the tracts and a much smaller number of acres in the
other; and that the metes and bounds of the two tracts were
stated in the deed, and as usual the source from which the
title was derived.

James W. Cochran testified that he was an intimate personal
and political friend of Captain Lurty; that Captain Lurty
frequently visited his shop and had talked with him several
times about the mountain farm, St. Maur, and that it be-
longed to his wife, and in one of their conversations Captain
Lurty had told him that he had been offered a very high price
for it, so high that witness asked him if he was not going to
sell it, and Captain Lurty replied he could not sell it as he had
given it to his wife. This was while he and his wife were on
friendly terms.

Dr. Harris, a brother-in-law of Captain Lurty, testified that
in a conversation with him Captain Lurty told him that the
farm known as St. Maur was the appellee's property.

A nephew of the appellee also testified that Captain Lurty had told him and that he had heard Captain Lurty state, both before and after his marriage with the appellee, that he had given her a deed for his "mountain farm." As this witness was only eleven years of age at the date of Captain Lurty's marriage with the appellee and did not, as he admits, then know what a deed was, not much weight can be given to his deposition taken many years afterwards. But the other evidence referred to above can leave no reasonable doubt upon the mind that Captain Lurty did execute, acknowledge and deliver to the appellee prior to their marriage a conveyance of land.

The next question is: what land passed by the deed?

It clearly appears that the land so conveyed was situated on Dry river; that it was sometimes known as the "Mountain Farm," and sometimes as "St. Maur;" that the deed embraced all the land known as St. Maur. It is described in the conveyance by which Captain Lurty acquired title to it as consisting of two parcels, one supposed to contain six hundred and thirty-two acres more or less, and the other sixty-seven acres more or less. That conveyance refers to the deed by which his grantor acquired title to the land for a more perfect description of it, and in that deed the courses and distances are given.

Dr. Points testified that the deed which he prepared at Captain Lurty's request, in which the appellee was the grantee, described the land as consisting of two parcels, one of a considerable acreage and the other much smaller; that the metes and bounds were stated in the deed, and also the source from which the title was acquired. There is no pretense that Captain Lurty ever owned any land on Dry river, or in that portion of the county, other than that known as "St. Maur."

In one of Captain Lurty's letters to the appellee he refers to the boundary of land which he proposed to convey to her as containing, including *interlocks,* six thousand acres, of which he writes she will own at least eight hundred acres. This state-

ment, it is insisted, shows that the land conveyed by him to the appellee is not the same as that claimed by her and described in her pleadings.

In the deed to Captain Lurty's grantors (Newman and wife), there is a statement which shows that the boundary conveyed did or might conflict with other titles. Captain Lurty may have had this in mind when he referred to the interlocks in his letter—but whatever may have been his view as to the number of acres in the boundary including the interlocks, it clearly appears that the land which he conveyed and intended to convey to the appellee was the land acquired from Newman and wife, and known as "St. Maur."

The remaining question to be considered is, whether or not the loss or destruction of the deed from Captain Lurty to the appellee was satisfactorily shown.

There is no direct evidence that the deed was lost or destroyed. The appellee was an incompetent witness. There is nothing in the record to suggest that she could have any object in secreting or destroying it, or in having a deed conveying different land, or a greater interest set up in its place. The deed, as clearly appears from the letters of Captain Lurty, who was a lawyer, was a conveyance of the whole of the land known as "St. Maur," in fee-simple. In one of his letters he writes: "By this time I hope you are reading your deed of my gift to your manor, absolutely your own. No partners, no joint owners, nor survivors. A great mountain range with none to divide or interfere. * * * It is yours without let or hindrance. * * * You have as good a deed as the mind of man ever devised." In another, referring to the character of the gift, he writes, it is "the manor of St. Maur, not a mere promise, but a full and complete deed in every particular. * * *"

Generally, the loss of an instrument can only be established by circumstantial evidence. Where the existence and contents of an alleged lost paper have been clearly proved, and there is nothing in the facts and circumstances of the case to suggest

that the party seeking to have it set up could have any motive or object in alleging its loss, the same high degree of proof as to its loss ought not to be required as where this is not the case. The degree of proof of the loss depends upon the circumstances of the particular case, and the rule should be so applied as to promote the ends of justice and carefully guard against fraud and imposition. The rule only requires that its loss shall be established with reasonable certainty in a case like this.

The facts and circumstances relied on in this case to show the loss of the deed relate to or grow out of the unhappy differences which existed between Captain Lurty and his wife during the last two years of his life, during which time the appellant was his housekeeper and nurse, and his wife, for causes real or imaginary, refused to reside with him. It would serve no good purpose to discuss in detail these facts and circumstances, but it is sufficient to say that it is impossible to read the record in the case without being fully convinced, not only that the deed sought to be set up was executed and delivered by Captain Lurty to the appellee, conveying the land claimed by her and described in her bill, but that the deed had been lost or destroyed.

We are of opinion, therefore, that there is no error in the decree complained of, and that it should be affirmed.

*Affirmed.*