GARCIA I. JOHNSON *v.* THE NATIONAL EXCHANGE BANK OF WHEELING, *Executor, etc.*

(No. 9223)

Submitted February 10, 1942. Decided March 17, 1942.

*Hall, Goodwin & Paul,* for plaintiff in error.

*Thomas B. Foulk* and *James G. McClure,* for defendant in error.

RILEY, JUDGE:

Garcia I. Johnson prosecutes this writ of error, erroneously called an appeal in Code, 58-3-4 (see *In re: Estate of T. J. Long, Deceased,* 122 W. Va. 473, 10 S. E. 2d 791), to a judgment of the circuit court of Ohio County, West Virginia, affirming an order of the county court of said county, which order affirmed the action of a commissioner of accounts rejecting plaintiff in error's claim against the estate of Oliver J. Johnson, her deceased husband.

Garcia I. Johnson filed before a commissioner of accounts a proof of claim against the estate of her husband, in which she asserted that on October 16, 1939, her husband borrowed $4,000.00 of Home Owners' Loan Corporation bonds belonging to claimant, sold them through The National Exchange Bank of Wheeling, West Virginia, and used the proceeds for the purpose of buying real estate, with the intention on decedent's part of paying plaintiff the value thereof.

The record discloses that prior to 1937 decedent gave to claimant five $1,000.00 Home Owners' Loan Corporation bonds, payable to bearer. While the Johnsons were living in California she had the bonds in her possession, but disposed of one. Later they returned to Wheeling and the four bonds remaining unsold were kept there in Mrs. Johnson's safety deposit box at The National Exchange Bank until it became overcrowded with papers, when they were placed in decedent's deposit box, in an envelope marked "Property of Garcia I. Johnson." Both parties cut the bond coupons and, according to Mrs. Johnson's

testimony, when decedent did the proceeds thereof were deposited either in her personal account or their joint bank account.

On October 16, 1939, the bonds having been called, decedent, without claimant's knowledge, cashed them and deposited the proceeds amounting to $4,075.00 in the joint bank account. On October 25, 1939, the amount of a check for $742.73 was deducted, leaving $12,113.85 in the account; and on the same day a deposit in the amount of $4,000.00 was made, evidently by a check drawn on decedent's individual account. Later three deposits, aggregating $375.40, were made, making a total in the joint account of $16,489.25. With this amount in the account, decedent drew a check thereon for $15,500.00 and used the proceeds thereof to purchase a house and lot in Wheeling, the title to which was taken in the names of "Oliver J. Johnson and Garcia I. Johnson, the survivor thereof to take the entire estate in fee simple." After the check for the purchase price was paid there remained in the account $989.25. When Mr. Johnson died a few months thereafter, the balance in the joint account was $2,104.25, which was turned over to claimant.

At the threshold of this case the jurisdiction of the commissioner of accounts to adjudicate the claim asserted by Mrs. Johnson is challenged. This Court has had occasion in several cases in recent years to enunciate to what extent and by what limitations the judicial process may be exercised by county courts. Point 3, Syllabus, in *Boone v. Boone*, 123 W. Va. 696, 17 S. E. 2d 790, (decided November 25, 1941,) reads as follows:

> "County courts are of limited jurisdiction in the sense that their powers are prescribed by Section 24, Article VIII, West Virginia Constitution, but in all matters of probate, the appointment of the fiduciaries named in said Section 24, and the settlement of their accounts, they are courts of record, vested with judicial powers and unlimited in their jurisdiction where, in regular session, jurisdiction of both subject matter and parties is had."

In *In re Brown's Estate,* 123 W. Va. 504, 16 S. E. 2d 801 (1941), this Court held that where a county court was without jurisdiction in the first instance, a writ of error to its ruling to the circuit court did not thereby confer jurisdiction upon the latter tribunal. Tested by these principles, we revert to the quaere whether the county court, and incidentally the commissioner of accounts, acted within the scope of the jurisdiction vested under West Virginia Constitution, Article VIII, Section 24. An answer thereto must necessarily involve an analysis of the nature of Mrs. Johnson's claim.

It is clear that recovery is sought on the theory that Johnson had "borrowed" the proceeds of the bonds, with the intention on his part to repay the alleged loan. Judicially, her claim is grounded in a contract implied in fact. According to decisions and text writers, such a contract presupposes an obligation "arising from mutual agreement and intent to promise but where the agreement and promise have not been expressed in words." Williston on Contracts, Revised Ed., § 3. It requires a meeting of the minds, just as much as an express contract. *Baltimore and Ohio R. Co.* v. *United States,* 261 U. S. 592, 593, 43 S. Ct. 425, 67 L. ed. 816. In cases which did not involve the jurisdictional feature, this Court approved allowance by a commissioner of accounts based upon contracts implied in fact, though not so nominated. *In Re Estate of John C. Gilbert,* 115 W. Va. 599, 177 S. E. 529; *Broderick* v. *Broderick,* 28 W. Va. 378. In those cases intention of the decedent was the prerequisite factor to the award, and a commissioner of accounts merely translated into an award what the decedent assented to. But, in the instant case the record is silent of any facts which would warrant a conclusion that there was an intention—even by implication—to repay Mrs. Johnson. Were that intention present the claim would be purely a claim *ex contractu,* though implied in fact, and jurisdiction of the county court would then be clear. In the absence of intention, jurisdiction is lacking upon the theory presented in the claim as filed.

If the claim be excluded as a contract implied in fact, then how may it be characterized? Counsel for Mrs. Johnson argue that Johnson was guilty of a conversion; and the trial court, though denying the claim because of the "fact Mrs. Johnson has received the proceeds of this money," thought "there may have been a technical conversion." Assuming, without deciding, that the facts adduced constituted conversion, would the county court have jurisdiction? The term denotes "an unlawful taking" and constitutes the gist of an action of trover, wherein an injured party seeks to recover damages. Burks, Pleading & Practice, 3d Ed., page 257. At the election of the party injured, the tort involved in a conversion or wrongful appropriation of one's property by another could be waived, and indebitatus assumpsit relied upon for recovery. *Walker* v. *N. & W. Ry. Co.,* 67 W. Va. 273, 67 S. E. 722; *Maloney* v. *Barr,* 27 W. Va. 381. Hence, if the claim be upon the theory of conversion, if contractual at all, it is a quasi contract. Williston on Contracts, Revised Ed., page 9, states:

"It is important to distinguish between quasi contracts and contracts implied in fact, not only because it is desirable for clear theoretical analysis, but also because of the difference in the legal relations which may be involved under a true contract and those imposed by law under the name of a quasi contract. In the first place as quasi contractual obligations are imposed by law for the purpose of bringing about justice without reference to the intention of the parties, the only apparent restrictions upon the power of the law to create such obligations is that they must be of such a sort as would have been appropriately enforced under common-law procedure by a contractual action."

The distinction between a quasi contract and one implied in fact is noted in *B. & O. R. Co.* v. *United States, supra,* by the following language:

"The 'implied agreement' contemplated by the Dent Act as the basis of compensation is not an

> agreement 'implied in law,' more aptly termed a constructive or quasi contract, where, by fiction of law, a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress, but an agreement 'implied in fact,' founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."

But the actions of trover and assumpsit are creatures of the common law and are the subjects of consideration in this State only for courts of law. Under our system of jurisprudence these actions involve the right to trial by jury. The scope of power of a county court is circumscribed by the source of its creation—the Constitution. Since that document does not grant to such courts the jurisdiction here sought to be invoked, we are of opinion that county courts are not justified in drawing unto themselves the power to adjudicate substantive rights based upon a conversion grounded in a duty imposed by law rather than by mutual assent, the enforcement of which may be had through legal processes distinctively developed in our common law practice.

For the reasons assigned, we are of opinion that both the commissioner of accounts, as well as the county and circuit courts, were without jurisdiction and therefore the adjudication of the claim upon its merits was a nullity. The judgment of the circuit court is reversed, and plaintiff in error's claim dismissed but without prejudice to her to pursue such course as may be proper, in which event, we direct attention to Code, 44-2-8, which provides, in settlement of decedents' estates, for reservation of sums sufficient to pay unliquidated claims.

*Judgment reversed; claim dismissed without prejudice.*