456 S.E.2d 554

**David L. MARSHALL, dba David's Enterprises, Plaintiff Below, Appellant**

v.

**ELMO GREER & SONS, INC. and the Hartford Fire Insurance Company, Defendants Below, Appellees.**

**No. 22300.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 24, 1995.

Decided March 24, 1995.

**428**

Thomas W. Kupec, Michael & Kupec, Clarksburg, for appellant.

J. Greg Goodykoontz, Steptoe & Johnson, Clarksburg, for appellees.

PER CURIAM:

David L. Marshall appeals from a partial summary judgment order of the Circuit Court of Harrison County dismissing his contract claim against Elmo Greer & Sons, Inc. (hereinafter Greer) and The Hartford Fire Insurance Co., Greer's surety on the Greenbrier County construction project. Mr. Marshall maintains that circuit court erred in finding the contract between Mr. Marshall and Greer (hereinafter the express, written contract) to be unambiguous and in dismissing Mr. Marshall's contract claim. Although we agree that the dismissal of the express, written contract claim was proper, nonetheless, we find the dismissal to be premature because Mr. Marshall's complaint may state an implied contract or *quantum meruit* claim that was not considered by the circuit court.

Greer, a general contractor for the West Virginia Dept. of Highways on project I–ID–64–4(37)143, a part of Interstate 64's construction in Greenbrier County (hereinafter the project), was required by the State to employ minority subcontractors. Mr. Marshall, a minority subcontractor, and Greer entered an express, written contract dated April 3, 1985, by which Mr. Marshall agreed to perform "clearing and grubbing" for which Greer agreed to pay $139,055.[1] Greer also agreed to pay $97,900 to Mr. Marshall for a certain amount of class B Concrete, but that portion of the contract is not part of this case.

Section VIII of the express, written contract provided, in pertinent part:

Payment shall be determined by the unit price for each particular kind of work shown on Exhibit "A"....

Exhibit A provided the following work description:

| ITEM | DESCRIPTION | APPRO.QUAN. | UNIT | AMOUNT |
|---|---|---|---|---|
| 201–1 | CLEARING & GRUBBING | 1.0 LS | $139055.00 | $139055.00 |
| 601–2 | CLASS B. CONCRETE | 356.0 CY | 275.00 | 97900.00 |
| | | | TOTAL | $236955.00 |

1. According to Mr. Marshall's brief, clearing and grubbing prepares an area for construction. Clearing is the removal of "trees and stumps of certain size" and grubbing is mulching the vegetation into the soil.

In addition, Section X of the express, written contract stated:

> This Contract includes all changes, addenda, etc., to date; and takes precedence over any and all proposal, correspondence, and oral agreements made prior to the execution of this Contract, this constituting the entire Agreement between Parties.

Mr. Marshall contends that in addition to the four pages submitted by Greer, the express, written contract also included a cover sheet showing that Mr. Marshall's contract was to clear and grub ninety-one (91) acres. Mr. Marshall maintains that the parties agreed he was to be paid about $1,500 per acre for clearing and grubbing. Mr. Marshall maintains that after he cleared and grubbed the ninety-one acres under the contract, Greer allowed him to continue clearing and grubbing an additional 110 acres—almost the entire project. Mr. Marshall contents that Greer's refusal to pay for his additional work caused his financial problems that led to his dismissal by Greer.

In support of his contention that the express, written contract was a per acre payment contract for ninety-one acres, Mr. Marshall notes that Greer reported to the Dept. of Highways that the express, written contract was "partial." Greer argues that the contract was reported as partial because Greer intended and performed clearing and grubbing in project areas other than the right of way. Mr. Marshall notes that clearing and grubbing was a substantial part of Greer's contract with the State. According to a line item, in Greer's "Schedule of Prices" submitted to the State, the project's clearing and grubbing cost was $1,080,000.

Greer, arguing that the express, written contract is unambiguous and parol evidence is not admissible to contradict the terms of the express, written contract, sought the dismissal of Mr. Marshall's contract claim. The circuit court agreed and granted Greer partial summary judgment. Mr. Marshall appealed to this Court.

## I

■ A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

Syl. pt. 3, *Aetna Casualty and Surety Company v. Federal Insurance Company,* 148 W.Va. 160, 133 S.E.2d 770 (1963); Syl. pt. 5, *Warner v. Haught, Inc.,* 174 W.Va. 722, 329 S.E.2d 88 (1985).

The record clearly establishes that Mr. Marshall cannot prevail on his express, written contract claim. Mr. Marshall contends that the express, written contract was really a $1,500 per acre charge for clearing and grubbing. To support his argument, Mr. Marshall cites the express, written contract's cover sheet, which is missing, and various oral negotiations and representations that occurred before the express, written contract was signed.

■ According to Mr. Marshall, the missing cover sheet showed that he agreed to clear and grub ninety-one acres at $1,500 per acre. However, Mr. Marshall's allegation that the express, written contract contained an additional page is not creditable. The express, written contract, in the form submitted by Greer, begins with the caption "CONSTRUCTION AGREEMENT" and a short paragraph identifying the date and parties. The instrument continues with consecutively numbered sections I through Section X; "EXHIBIT A" is at the beginning of the fourth page and the parties' signatures follow thereafter. No missing page is apparent from the structure of the instrument. No additional page was submitted by Mr. Marshall.

Generally, a high degree of proof from one seeking to establish a lost instrument is required. In Syl. pt. 1, *Lucas v. Hensley,* 81 W.Va. 239, 94 S.E. 138 (1917) we said, "[t]o establish title to land under an alleged lost deed, on parol testimony, proof that it existed, and of its contents, must be clear and conclusive." *See* Syl., *Drake v. Parker,* 122 W.Va. 145, 7 S.E.2d 651 (1940) ("[f]or parol testimony to establish title to land through an alleged lost instrument, proof of its execution, contents and loss must be conclusive"); *Gill v. Colton,* 12 F.2d 531, 534 (4th Cir.1926) ("[i]t is incumbent upon one seeking to establish a lost instrument to prove it by evidence of the clearest and most satisfactory charac-

ter"); *Smith v. Lurty*, 108 Va. 799, 800–01, 62 S.E. 789, 790 (1908) (because of the motive of the party alleging a lost instrument, a high degree of proof is required). In this case, because no evidence shows that the express, written contract includes more than four pages, we reject Mr. Marshall's allegation.

■ Mr. Marshall next asserts that various oral negotiations and representations occurred *before* the express, written contract was signed to show that the express, written contract was a per acre charge. However, we have long held that "[a] written contract merges all negotiations and representations which occurred before its execution, and in the absence of fraud, mistake, or material misrepresentations extrinsic evidence cannot be used to alter or interpret language in a written contract which is otherwise plain and unambiguous on its face." Syllabus Point 1, *Warner v. Haught, Inc.*, 174 W.Va. 722, 329 S.E.2d 88 (1985). *In accord Jolynne Corp. v. Michels*, 191 W.Va. 406, 412, 446 S.E.2d 494, 500 (1994); Syl. pt. 1, *Buckhannon Sales Co., Inc. v. Appalantic Corp.*, 175 W.Va. 742, 338 S.E.2d 222 (1985); Syl. pt. 3, *Iafolla v. Douglas Pocahontas Coal Corp.*, 162 W.Va. 489, 250 S.E.2d 128 (1978).

■ However, the plain language of the express, written contract in Exhibit A states that clearing and grubbing was a lump sum payment rather than a per acre charge. Under the contract Mr. Marshall was to be paid $139,055 to perform certain clearing and grubbing on the project. The documents filed in this case show, beyond a doubt, that Mr. Marshall was paid the contract amount and Mr. Marshall is not entitled under the plain language of the express, written contract to additional payments. A determination of the amount of work performed under the express, written contract is not necessary to affirm the circuit court's rejection of Mr. Marshall's express, written contract claim.

## II

Although Mr. Marshall's express, written contract claim was properly dismissed, Mr. Marshall's complaint may raise an implied

contract theory of recovery, which was not directly addressed by the circuit court's summary judgment order.

An implied contract "presupposes an obligation 'arising from mutual agreement and intent to promise but where the agreement and promise have not been expressed in words.'" *Case v. Shepherd*, 140 W.Va. 305, 310, 84 S.E.2d 140, 143 (1954) (quoting *Williston on Contracts*, Revised Ed., § 3). However, "[a]n implied promise must be as distinctly alleged in a declaration as an express one." Syl. pt. 2, *Bannister v. Victoria Coal & Coke Co.*, 63 W.Va. 502, 61 S.E. 338 (1908).[2]

"An implied contract arises from the principle of equity that one person may not enrich himself unjustly at the expense of another. *Development Co. v. Howell*, 101 W.Va. 748, 133 S.E. 699." *Lockard v. City of Salem*, 130 W.Va. 287, 292, 43 S.E.2d 239, 242 (1947). However, "[a]n implied contract and an express one covering the identical subject-matter cannot exist at the same time. If the latter exists, the former is precluded. [Citations omitted.]" *Rosenbaum v. Price Const. Co.*, 117 W.Va. 160, 165, 184 S.E. 261, 263 (1936). *See, Case, supra*, 140 W.Va. at 311, 84 S.E.2d at 144 ("[a]n express contract and an implied contract, relating to the same subject matter, can not co-exist"); *Bright v. QSP, Inc.*, 20 F.3d 1300, 1306 (4th Cir.1994); *White v. National Steel Corp.*, 742 F.Supp. 312, 329 n. 22 (1989). *See also Johnson v. National Exchange Bank of Wheeling*, 124 W.Va. 157, 160, 19 S.E.2d 441, 442 (1942) (outlining the essential elements for an implied contract); *Case, supra*, 140 W.Va. at 310–11, 84 S.E.2d at 143–44; *Raymond, Colesar, Glaspy & Huss v. Allied Capital Corp.*, 961 F.2d 489 (4th Cir.1992).

In this case, the express, written contract does not preclude an implied contract because the written contract did not clearly identify the how much clearing and grubbing Mr. Marshall was to do. The contract in "Exhibit A" describes the amount of work as "1.0 LS," which according to Lee Anderson, Greer's Chief Engineer is "a lump sum contract." Although the parties agree that the

---

**2.** Rule 8, *WVRCP* [1992] obviously overrules the technical pleading requirement of *Bannister*, but the principle that there must actually be an *implied* promise that can be proven remains intact.

express contract was a partial clearing and grubbing contract, they disagree on how much work was required under the contract. Greer contends that Mr. Marshall was to clear and grub the entire "right-of-way" and Greer was do the off-site work. Mr. Marshall contends that the express contract refers only to a portion of the right-of-way work, or about ninety-one acres.

█ Given the contract's failure to specify the area to be cleared and grubbed, the circuit court erred in concluding as a matter of law that the express, written contract "requires David Marshall to clear and grub the *right of way* as specified in the construction agreement. [Emphasis added.]" The extent of the work subject to the contract presents a genuine issue of fact to be tried, provided that Mr. Marshall has stated a *quantum meruit* claim. We address this error concerning the extent of express, written contract work so that it does not preclude a consideration of any implied contract claim.

Because Mr. Marshall may have an implied contract claim, which is not facially precluded by the express, written contract, we reverse the circuit court and remand the case for a determination of a possible *quantum meruit* claim.

For the above stated reasons, we affirm that portion of the Circuit Court of Harrison Court summary judgment dismissing Mr. Marshall's express, written contract claim, but reverse that portion which precludes the consideration of an implied contract claim and remand this case for additional proceedings.

*Affirmed, in part, reversed, in part, and remanded.*

CLECKLEY, Justice, concurring:

In conducting the required *de novo* review of the circuit court's decision to grant summary judgment, the majority opinion states: "Mr. Marshall's allegation ... is not creditable." 193 W.Va. at 429, 456 S.E.2d at 556.

If there is one thing that is clear under Rule 56 of the West Virginia Rules of Civil Procedure, it is that a court's function at the summary judgment stage is not to weigh evidence and determine the truth of a matter, but it solely is to determine whether there is a genuine issue for trial. *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). I concur, however, because the outcome would likely not have been different had the majority applied the correct standard.

Engaging Rule 56 analysis, I believe Mr. Marshall did not meet his burden of demonstrating that a genuine issue of fact exists in reference to an additional contractual provision providing for the clearing and grubbing of ninety-one acres at $1,500 per acre. Self-serving assertions without factual support in the record will not defeat a motion for summary judgment. Thus, a plaintiff cannot avoid summary judgment by merely asserting the moving party is wrong, lying, or hiding evidence.* Rather, Rule 56 requires the nonmoving party to produce specific facts that cast doubt on the conclusiveness of the defense or raise significant issues of credibility. The plaintiff is required to make this showing because he is only entitled to the benefit of all *reasonable* or *justifiable* inferences when confronted with a motion for summary judgment. Under Rule 56, facts, inferences, and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors.

Because I can find *no* evidence whatsoever in this record giving factual support to Mr. Marshall's claim that there is a missing part of the contract, I believe the granting of summary judgment is appropriate. Indeed, Rule 56(e) mandates the entry of summary judgment where the party opposing the motion "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322,

---

* This is not a case where the plaintiff needed more time to avail himself of additional discovery to obtain the missing page. In fact, no such request was made and the plaintiff did not seek to comply with Rule 56(f). *See Nguyen v. CNA Corp.*, 44 F.3d 234, 241–42 (4th Cir.1995) (failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate); *Paddington Partners v. Bouchard*, 34 F.3d 1132 (2nd Cir. 1994).

106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). Without sufficient evidence establishing the existence of another page to the contract, Mr. Marshall's remaining evidence is insufficient to demonstrate a genuine issue of fact. Under these circumstances, " '[i]f a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue.' " *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir.1993), *quoting World–Wide Rights Ltd. Partnership v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir.1992).

In summary, the judgment of the lower court should be affirmed not because Mr. Marshall "is not creditable," but because his unsupported allegations of the existence of another contractual provision are not sufficient to withstand the granting of a motion for summary judgment.