IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

**FILED**

**October 26, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 22-0036
_____

SANDY M. AND SANTANA M.,
Co-Guardians and Co-Conservators of DONALD M.,
Defendants Below, Petitioners,

v.

DONALD M.,
Plaintiff Below, Respondent.

_____

Appeal from the Circuit Court of Wayne County
The Honorable James H. Young, Jr., Judge
Civil Action No. 19-C-66

AFFIRMED
_____

Submitted:  September 26, 2023
Filed:  October 26, 2023

Michael S. Bailey, Esq.                     Cayman M. Jarrell, Esq.
Bailey Legal Services, PLLC                 Jarrell Law Office
Barboursville, West Virginia                Wayne, West Virginia
Counsel for Petitioners                     Counsel for Respondent

JUSTICE WOOTON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.    "In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a de novo review."  Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).

2.    "To establish title to land under an alleged lost deed, on parol testimony, proof that it existed, and of its contents, must be clear and conclusive."  Syl. Pt. 1, *Lucas v. Hensley*, 81 W. Va. 239, 94 S.E. 138 (1917).

3.    "The proponent of a lost or missing instrument must prove its existence and contents with clear and conclusive evidence."  Syl. Pt. 2, *Estate of Bossio v. Bossio*, 237 W. Va. 130, 785 S.E.2d 836 (2016).

**WOOTON, Justice:**

Sandy M. and Santana M. (collectively "the petitioners")[1] are the guardians and conservators of the father.[2] They appeal the December 14, 2021, order entered by the Circuit Court of Wayne County, West Virginia, declaring the respondent Donald Gene M. as the owner in fee of all of the property and all the appurtenances of the property in dispute ("the disputed property") after conducting a bench trial.[3] The court determined that the respondent by "clear and strong" evidence had established all the required elements necessary to prove that the disputed property had been conveyed by the father to the respondent in a deed that had been signed by the father but thereafter was lost or stolen, and that the petitioners "did not present any witnesses or evidence to contradict" the respondent's evidence. The court also found that the respondent had established that he was entitled to title to the disputed property under a theory of adverse possession. The

---

[1]Sandy M. and Santana M. are also Donald M.'s ("the father") daughters and will be referred to throughout this opinion by their respective names. The case originally included another daughter of the father, Cherry S., who was identified as a conservator and guardian; however, Cherry S. had a "change of heart" after the filing of the answer in this case and testified on behalf of her brother, the respondent Donald Gene M. She does not appear as a petitioner in the instant appeal.

[2]The father has been declared a protected person lacking capacity by order entered on May 22, 2018, and has remained a protected person throughout these proceedings.

[3] The respondent, Cherry S., and the respondent's nephew, Mason S., all testified during the trial. The petitioners did not call any witnesses or present any evidence.

1

petitioners argue[4] that the circuit court erred in its findings of fact and conclusions of law relative to lost documents, the statute of frauds, and adverse possession, claiming that the findings of fact were contrary to the weight of the evidence and the legal conclusions were based on a misapplication of law. After considering the parties' briefs and oral arguments, the appendix record, the applicable law, and all other matters before the Court, we find that the circuit court did not err in granting title of the disputed property to the respondent, as the evidence established that the deed conveying the disputed property

---

[4] The petitioners set forth five assigned errors including: 1) the court's findings of fact and conclusions of law are against the weight of the evidence and are based on misapplication of the law in regard to lost documents, the statute of frauds, and adverse possession; 2) the court's application of the law to the facts erroneously awarded ownership of the real property under a theory of a lost or stolen document when the only evidence of this was the respondent's own self-serving testimony that a subsequent (but allegedly identical) deed was prepared and executed despite the lack of written or documented evidence of such a deed; 3) the court erred in its application of the law to the facts to award ownership of real property under a theory of adverse possession as to the entirety of the ninety-two acres despite the fact that the respondent's use of the property was with the father's knowledge and permission; 4) the court erred in is application of the law to the facts to award ownership of real property under a theory of adverse possession as to the entirety of the ninety-two acres despite the respondent's own testimony that he did not use, improve, or control any position of the bottom half of said property; and 5) the court erred in its decision to amend the pleadings to conform to the evidence to recognize a claim for "lost or stolen document" when such possible amendment was not raised for the first time until the court's final order as such claim was not asserted by the respondent. The petitioners set forth these assigned errors in a haphazard and redundant manner. For ease of review, we consolidate the assigned errors as did the petitioners in the argument portion their brief. *See Evans v. Holt*, 193 W. Va. 578, 581 n.2, 457 S.E.2d 515, 518 n.2 (1995) ("For ease of discussion, those assignments of error that are redundant are consolidated conceptually herein.").

2

from the father to the respondent was lost or stolen.[5]   Accordingly, we affirm the circuit

court's decision.

---

[5] The petitioners also argue that the circuit court erred in finding that the respondent established the elements needed to prove adverse possession. We agree. Under West Virginia law, "[t]he burden is upon the party who claims title by adverse possession to prove by clear and convincing evidence all elements essential to such title."  Syl. Pt. 2, *Brown v. Gobble*, 196 W. Va. 559, 474 S.E.2d 489 (1996). In this regard,

> [][o]ne who seeks to assert title to a tract of land under the doctrine of adverse possession must prove each of the following elements for the requisite statutory period [which is ten years]: (1) That he has held the tract adversely or hostilely; (2) That the possession has been actual; (3) That it has been open and notorious (sometimes stated as visible and notorious); (4) That possession has been exclusive; (5) That possession has been continuous; (6) That possession has been under claim of title or color of title.[]

*Id*. at 566, 474 S.E.2d at 496 (quoting Syl. Pt. 3, *Somon v. Murphy Fabrication and Erection Co.*, 160 W. Va. 84, 232 S.E.2d 524 (1977)); *see* W. Va. Code § 55-2-1 (2016) (establishing ten-year statutory period).

Here, the respondent testified that he acted with the father's permission in his use of the property and, in fact, believed the property had been gifted to him by the father. The respondent's permissive use of the property defeats any claim of adverse possession. As this Court recognized in *Fantasia v. Schmuck*, 183 W. Va. 361, 395 S.E.2d 784 (1990),

> [i]f the use of the land in dispute is permissive, the element of hostility or adversity is negated.  "It is elementary that adverse possession cannot be permissive. . . .  Permissive possession is not considered to be the possession of the occupant but is considered to remain the possession of the party on whose pleasure the permissive possession depends." 3 Am.Jur.2d *Adverse Possession* § 52 (1986) (footnotes omitted).

*Fantasia*, 183 W. Va. at 363, 395 S.E.2d at 786.  Thus, the circuit court erred in its determination that the respondent proved all the requisite elements of adverse possession of the disputed property. Nevertheless, the circuit court's decision is still properly affirmed by this Court as discussed *infra* in greater detail. "This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal

## I. Facts and Procedural Background

On February 9, 1989, the respondent acquired land adjoining the father's property; however, the respondent's property did not provide access to any improved roadway. The respondent testified that the father told him that he (the father) would give the respondent the land adjacent to the respondent's property ("the disputed property"). Based on the father's assurances, the respondent testified that he made (and paid for) improvements to the disputed property, including building a road, which involved clearing trees, setting off dynamite, and filling in with extensive amounts of gravel. The respondent testified that in or about 1990 he fenced in the disputed property and installed three gates, which restricted access to the road he had constructed. The respondent also testified that he installed relay stations so that city water could be pumped onto the property and cleared trees along each side of the road so that electricity could be run to the property. The respondent further testified that in or about 2008 he paid approximately $110,000 to have a home built on the disputed property for his daughter.[6]

---

ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

[6] This portion of the disputed property was conveyed by the father to the respondent's daughter, Tiffany B., and her husband by deed dated January 24, 2013, reserving a life estate in the property for the respondent and his wife. No issue is raised in regard to this conveyance. The father also conveyed a parcel of the disputed property to the respondent's son, Jeremy M., by deed dated February 5, 2013. There also is no issue pertaining to this conveyance.

4

In 2012, the father and the respondent decided to formalize the father's gift of the disputed property to the respondent by executing a deed conveying the property. The father walked the disputed property with the respondent, driving stakes into the ground delineating the property boundaries. The respondent testified that the father then hired True Line Surveying, Inc., to survey the disputed property using the stakes that the father and the respondent had placed in the ground. In March 2012, Wayne County Surveyor Randy Thompson prepared a survey and plat of the boundaries of the disputed property. Mr. Thompson revised the survey on October 22, 2012, to reflect the parcels contained within the disputed property boundaries that were to be conveyed to the respondent's daughter and son.[7]

The respondent testified that after the father looked over the survey and accompanying plat, the father told him to go have a deed prepared memorializing a conveyance of the disputed property to the respondent, but reserving a life estate in the

_____

[7] Although not relevant to the resolution of this matter, it is apparent from the record that in preparation of conveying the disputed property from the father to the respondent, the disputed property was first surveyed in 2012 based on the stakes that the father had placed in the ground. Thereafter, this original survey was revised due to the anticipated conveyances of certain parcels contained therein by the father to the respondent's son and daughter, as the respondent's daughter already had a home on the parcel that was conveyed to her. *See supra* note 6. The record reflects that the deed in regard to the disputed property was prepared in 2012 and included the property description based on the October 22, 2012, revised survey, so logically the deed was prepared after the revised survey. As indicated in footnote six, the deeds to respondent's daughter and son were executed and recorded in early 2013.

5

property for the father.[8] The respondent had attorney Don Jarrell prepare a deed conveying the disputed property from the father to the respondent, and the respondent paid attorney Jarrell for the preparation of this deed. The respondent picked the deed up when it was ready and took it to the father, who was not at home. The respondent stated that his sister, Sandy M., was at the father's home and he showed the deed to her. When she saw that the deed had been prepared by attorney Jarrell, she told the respondent: "we want one from Mr. [Lycan]," who also was an attorney. Thus, this first deed was never executed.

The respondent testified that he went to attorney David Lycan and asked him to prepare a deed identical to the one that had been prepared by attorney Jarrell. The respondent also paid for the preparation of this deed. When the second deed was ready, the respondent testified that he accompanied his father to attorney Lycan's office. The respondent stated that he and his father picked up the deed and took it to the car so that the father could read it "and go over the plat and everything step-by-step, which we did." The father told him, "It's perfect." The two went back into attorney Lycan's office, where the respondent watched the father sign the deed. The father's signature was notarized by attorney Lycan's secretary, Pilar Harrison, who put her seal on the document. Ms. Harrison then told the respondent that she could have the deed recorded, and that it would

---

[8] There was no objection by the petitioners to the admission of the unexecuted deed as "being offered for purposes of identification by [the respondent] being the one he asked Don Jarrell's office to produce."

6

cost seventy-eight dollars for that service.  The respondent testified that he paid attorney Lycan in cash for preparing the deed, and for the costs and fees associated with recording the deed; he was given a receipt for the services rendered, but did not retain the receipt. Neither the respondent nor the father was given a copy of the executed deed.

The deed was not recorded. The respondent testified that shortly thereafter he called attorney Lycan's office to confirm that the deed had been recorded, and was informed by Ms. Harrison that it had not been.  The respondent testified that he was told his sisters had picked up the deed and took it with them.  He asked: "How could you give my deed away to somebody else?" and was told, "Well, they said that they would take care of it, and I thought it would be all right."  The respondent then went to the father's home and asked his sister, Sandy M., "Where's my deed at?"  and was told that she had put the deed with their father's will.  When the respondent asked the father if this is was what he wanted, the father responded, "they got it with my will," adding "You know it's yours.  It's every bit yours."  Finally, the father told him, "At my death, they will give it to you."

Cherry S. testified that her sister Sandy M. was friends with Ms. Harrison. According to Cherry S., Ms. Harrison called Sandy M. and told her that their brother and father had been to attorney Lycan's office to get a deed signed, and asked if she wanted to come to the office to see the deed.  Cherry S. went to the Lycan office with Sandy M., and they collected the deed from Ms. Harrison.  Cherry S. testified that she saw the deed,

7

and that the deed had been signed by the father and notarized. She stated that she knew the father wanted the respondent to have the disputed property and that she and her sister "should've never went down there and got the deed, and brought it up there, because that has nothing to do with us. My dad wanted my brother to have that [referring to the disputed property.]"

The respondent also called as a witness his nephew (and the father's grandson) Mason S. Mason S. testified that his aunt Sandy M. was informed about the executed deed by Ms. Harrison and that Sandy M. schemed that "[o]ne day, we can get money [out] of all this because we've got his [the respondent's] driveway."

The respondent testified that the father suffered a stroke in 2015,[9] which, as the undisputed evidence of record shows, was after the father had executed both the deed to the disputed property and his will.[10] A guardianship/conservator proceeding was

---

[9] The petitioners indicate in their brief that the stroke occurred in 2015. We note that the circuit court found that the father also suffered from dementia, which finding is not disputed.

[10] The father executed a will on October 23, 2014. He discussed his will with the respondent, and asked the respondent what property he would like to receive. The respondent testified that because he had already received the disputed property through the deed the father had executed, he asked the father for the Mathis Ridge property. The father's will contains a provision bequeathing the Mathis Ridge property to the respondent.

8

instituted and, according to the petitioners' brief, the father was recognized as a protected person in 2018. During that proceeding, the father's will was read, at which time the respondent realized that there was no mention of the deed conveying the disputed property to him despite the fact that the deed was supposed to have been kept with the father's will. As a result, the respondent testified, he became concerned about the whereabouts of the deed.

On April 18, 2019, the respondent filed a complaint against his sisters, who were the guardians and conservators for their father. He alleged in the complaint that in 2012 the father had conveyed title to the disputed property to him by a deed executed by the father and notarized by attorney Lycan's secretary, but that "deed was never recorded by The Law Office of David Lycan;" that the respondent had title to the land under a claim of adverse possession because he "held [the disputed property] under a code of title for more than ten years, as well as upkeep and maintenance[;]" and that the petitioners were "unjustly enriched by the improvements that [the respondent] built upon the land that was promised to have been his land."[11] The petitioners then filed a motion for

_____

[11] The circuit court found the unjust enrichment count to be without merit, because the respondent had "not offered any reliable or admissible evidence in the record that can establish either the cost or value of any such improvements including for creation and maintenance of the road, utilities, or fencing." The respondent does not appeal this ruling and therefore he has waived any claim of error with regard to the unjust enrichment count. *See Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W. Va. 135, 140 n.10, 506 S.E.2d 578, 583 n.10 (1998); Syl. Pt. 6, *Addair v. Bryant*, 168 W. Va. 306, 284 S.E.2d 374 (1981)("Assignments of error that are not argued in the brief on appeal may be deemed by this Court to be waived.").

summary judgment, and it was in the summary judgment proceedings that the issue of the deed being lost or stolen arose. The circuit court denied the petitioners' motion for summary judgment, finding that there "remain disputed issues of material fact, the most notable of which at this time are questions as to whether the deed Plaintiff claims to have had was taken by one of the Defendants and refused to be returned." Thereafter, the matter proceeded to a bench trial, at the conclusion of which the circuit court declared that the respondent was the owner in fee of all the disputed property as described in the court's order. The petitioners appeal.

## II. Standard of Review

The petitioners' alleged errors challenge the findings of fact and conclusions of law in the final order entered by the circuit court following a bench trial. Our standard of review provides:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996). With these standards in mind, we address the issues before us.

## III. Discussion

The petitioners argue that the circuit court erred in finding that the respondent proved the necessary elements to establish his claim to title in the disputed property by clear and convincing evidence.[12] Conversely, the respondent contends that the court properly relied upon "the Lost Document Theory . . . to declare the Plaintiff/Respondent the owner in fee to the property in question[,]" because he proved the elements of "a lost document by clear, strong, and conclusive evidence at trial." We agree with the respondent.

It is axiomatic in our jurisprudence governing property transactions that West Virginia Code section 36-1-1 (2011), commonly known as the statute of frauds, requires a deed or will to create an interest in real estate as follows:

> No estate of inheritance or freehold, or for a term of more than five years, in lands, or any other interest or term therein of any duration under which the whole or any part of

---

[12] The petitioners also challenge the circuit court's credibility determinations made in regard to the witnesses who testified on the respondent's behalf, and the court's determination, over the petitioners' hearsay objection, that the respondent could testify about any actions he took based on conversations that he had with the father but he could not testify as to "the words that were spoken [by the father]" because the father had been adjudicated a protected person and thus would not have been competent to testify.

We find the petitioners' challenges to be unavailing; evidentiary rulings and credibility determinations are left to the sound discretion of the circuit court. *See* Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W. Va. 229, 455 S.E.2d 788 (1995) ("The West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary . . . rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary . . . rulings of the circuit court under an abuse of discretion standard."). Nothing in the record of this case would support a finding that the circuit court abused its discretion either in its evidentiary rulings or its credibility determinations.

11

the corpus of the estate may be taken, destroyed, or consumed, except for domestic use, shall be created or conveyed unless by deed or will.

*Id*.

In regard to a deed, West Virginia Code section 36-3-4 (2011) requires that "[a]ny instrument which shows on its face *a present intent* to pass the title to, or any interest, present or future, in real property, *shall, if properly executed and delivered, be given effect according to its manifest intent*." *Id*. (emphasis added); *accord* Syl. Pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962) ("A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent."). Succinctly stated, a deed must sufficiently describe the property that the parties intend to be conveyed, it must be executed by the grantor, and it must be delivered. *See* W. Va. Code § 36-3-4.

With regard to description, this Court stated in *Sally-Mike Properties v. Yokum*, 175 W. Va. 296, 332 S.E.2d 597 (1985), that

> [a] deed of conveyance, in order to pass title, must contain a description of the property being conveyed which sufficiently identifies the land, either by the language of the granting clause itself or by reference to extrinsic facts which render the description certain. *See, e.g. Consolidated Coal Company v. Mineral Coal Company*, 147 W. Va. 130, 126 S.E.2d 194 (1962); *Meadow River Lumber Company v. Smith*, 126 W. Va. 847, 30 S.E.2d 392 (1944); *Jones v. Gibson*, 118 W. Va. 66, 188 S.E. 773 (1936).

175 W. Va. at 301-02, 332 S.E.2d at 602. Further, "[d]elivery of a deed by the grantor with intent that it take effect as his deed and its acceptance, express or implied, by the grantee are essential to its validity." Syl. Pt. 3, *Bennett v. Neff*, 130 W. Va. 121, 42 S.E.2d 793 (1947); *accord* Syl. Pt. 5, *Walls v. Click*, 209 W. Va. 627, 550 S.E.2d 605 (2001). "Recording of the deed is not critical . . . to its validity." *Jones v. Wolfe*, 203 W. Va. 613, 615, 509 S.E.2d 894, 896 (1998).

With the foregoing in mind, this case turns on whether the circuit court erred in determining that the respondent's parol evidence clearly and convincingly established that a legally valid deed conveying the disputed property to him existed, but had been lost or stolen. Generally,

> [t]he effect of a delivered deed to pass title is not affected as between the parties by the fact that the deed is thereafter lost or destroyed. The fact that a deed was lost or misplaced does not destroy the title of those claiming under it, nor revert it in a grantor, provided the instrument once existed and fulfilled the formalities required by law. The failure to record a deed does not deprive a person of the opportunity to assert a claim of legal title to property, and a lost deed may be established in order to prove title.

52 Am. Jur. 2d *Lost and Destroyed Instruments* § 6 (2023) (footnotes omitted).

Our precedents in regard to establishing a conveyance of property by a deed that was thereafter lost or stolen uniformly provide that

> [t]he spirit of our law is that title to land shall pass only by deed or will, and where it is sought to set up title under a lost deed,

13

the evidence of the execution of such deed, of the contents thereof, and of its delivery, must be clear and convincing, approaching in dignity the conclusiveness of a written instrument. This rule has been laid down and adhered to by this court and the Supreme Court of Appeals of Virginia without exception, and we think it is a rule based upon sound considerations of public policy.

*Lucas v. Hensley*, 81 W. Va. 239, 240, 94 S.E. 138, 139 (1917). This holding has remained unchanged and unchallenged since it was first articulated more than a century ago. *See* Syl. Pt. 6, *Shaffer v. Shaffer*, 69 W. Va. 163, 71 S.E. 111 (1911) ("If an ancient deed be lost, but its existence and contents be proven by oral evidence, and it be also proven to have been recently in the possession of and produced by the grantee, and such account thereof is given, as might be reasonably expected, under all the circumstances, such oral evidence is admissible to establish such deed or grant, without otherwise proving the due execution and delivery thereof; and such deed will be treated as presumptively genuine, until such presumption is overcome by evidence to the contrary."); Syl. Pt. 1, *Telluric Co. v. Bramer*, 76 W. Va. 185, 85 S.E. 177 (1915) ("To establish or set up a lost instrument rising to the dignity and importance of a muniment of title, the evidence of its former existence, loss, and contents must be clear, strong, and conclusive."). In *Lucas*, the Court reiterated its prior holdings in a new syllabus point: "To establish title to land under an alleged lost deed, on parol testimony, proof that it existed, and of its contents, must be clear and conclusive." *Id*. at 239, 94 S.E. at 138, Syl. Pt. 1. We see no reason to alter or amend this holding. *See Marshall v. Elmo Greer & Sons, Inc.*, 193 W. Va. 427, 429-30, 456 S.E.2d 554, 556-57 (1995) ("Generally, a high degree of proof from one seeking to establish a lost instrument is required. In Syl. pt. 1, *Lucas v. Hensley*, 81 W.Va. 239, 94 S.E. 138 (1917) we said, '[t]o

14

establish title to land under an alleged lost deed, on parol testimony, proof that it existed, and of its contents, must be clear and conclusive.' *See* Syl., *Drake v. Parker*, 122 W.Va. 145, 7 S.E.2d 651 (1940) ('[f]or parol testimony to establish title to land through an alleged lost instrument, proof of its execution, contents and loss must be conclusive'); *Gill v. Colton*, 12 F.2d 531, 534 (4th Cir.1926) ('[i]t is incumbent upon one seeking to establish a lost instrument to prove it by evidence of the clearest and most satisfactory character'); *Smith v. Lurty*, 108 Va. 799, 800-01, 62 S.E. 789, 790 (1908) (because of the motive of the party alleging a lost instrument, a high degree of proof is required).").

Most recently, in *Estate of Bossio v. Bossio*, 237 W. Va. 130, 785 S.E.2d 836 (2016), we examined the foregoing precepts in the context of a lost instrument, specifically, a lost stock purchase agreement. *Id*. at 133-35, 785 S.E.2d at 839-41. We reiterated that our consideration of whether a document or instrument was lost or stolen was well established and grounded in evidentiary principles:[13]

---

[13] The petitioners argue that the circuit court erred in amending the pleadings to conform to the evidence and to recognize a claim for "lost or stolen document" when the amendment was not made until the circuit court's final order. In response, the respondent concedes that the lost document theory was not explicitly in the pleadings but argues that he met the elements of a lost document by clear and convincing evidence that was unrefuted by the petitioners. Critically, the circuit court's amendment of the pleading was based on the respondent's failure to plead any *cause of action* (contractual or otherwise) based on his factual allegations as to the existence of a deed and then its mysterious disappearance. It is this failing that the circuit court sought to correct by amending the respondent's pleading.

Rule 15(b) of the West Virginia Rules of Civil Procedure provides for a court to amend the pleadings to conform with the evidence. *See id*. ("When issues not raised by the pleadings *are tried by express or implied consent of the parties, they shall be treated in*

15

As a threshold matter, we observe that Rule 1004(a) of the West Virginia Rules of Evidence provides that an original writing is not required to prove its contents where "[a]ll the originals are lost or destroyed, and not by the proponent acting in bad faith[.]" In that event, "secondary evidence" is permitted to prove the existence and content of a writing. All parties appear to agree that, although West Virginia has no blanket syllabus point governing all writings, this Court has traditionally followed the general rule that "a high degree of proof from one seeking to establish a lost instrument is required." *Marshall v. Elmo Greer & Sons, Inc.*, 193 W. Va. 427, 429, 456 S.E.2d 554, 556 (1995). The *Marshall* Court further cited with approval caselaw regarding lost deeds which consistently holds that "proof that [the deed] existed, and of its contents, must be clear and conclusive." *Id*. (citing Syl. Pt. 1, *Lucas v. Hensley*, 81 W. Va. 239, 94 S.E. 138 (1917)); *see also* Syl., *Drake v. Parker*, 122 W. Va. 145, 7 S.E.2d 651 (1940)

---

*all respects as if they had been raised in the pleadings*. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; . . . *the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby. . . .*") (emphasis added)); Syl. Pt. 4, *Floyd v. Floyd*, 133 S.E.2d 726, 148 W. Va. 183 (1963) ("Under both the old trial procedure in effect in West Virginia prior to July 1, 1960, and the new procedure in effect on and after that date as Rules of Civil Procedure, pleadings could be amended under control of the court during the trial of a case to encompass an issue raised by the evidence although not in the pleadings; but if an issue is so raised in trial and trial by consent of the parties without such amendment, it is treated as if it had been raised in the pleadings and the failure to amend will not affect the verdict.").

Our review of the appendix record shows that the petitioners neither objected to any of the evidence introduced by the respondent in regard to the lost or stolen deed, nor offered any evidence of their own to refute that offered by the respondent. Further, the respondent did, at least implicitly, raise the "lost or stolen deed" in the complaint as he alleged that he had an executed and notarized deed from the father that had not been recorded by the attorney. Further, the circuit court found in its denial of the petitioners' summary judgment motion that there remained a disputed factual issue in regard to whether the deed the respondent allegedly had was taken by one of the petitioners and "refused to be returned." Finally, the factual issue of the lost or stolen deed permeated the entire bench trial, as discussed in greater detail *infra*. Accordingly, the court did not err in amending the pleadings.

("For parol testimony to establish title to land through an alleged lost instrument, proof of its execution, content and loss must be conclusive."); Syl., *Telluric Co. v. Bramer*, 76 W. Va. 185, 85 S.E. 177 (1915) ("To establish or set up a lost instrument rising to the dignity and importance of a muniment of title, the evidence of its former existence, loss and contents must be clear, strong, and conclusive."). . . .

This precedent is in accord with the majority of jurisdictions: "The courts have used a variety of terms to describe the standard or degree of proof required to establish the existence and contents of a lost instrument, generally resting most heavily on the clear and convincing standard." 52 Am. Jur. 2d *Lost and Destroyed Instruments* § 35 (2015).

*Estate of Bossio*, 237 W. Va. at 134, 785 S.E.2d at 840 (footnotes omitted). Based on the foregoing, the Court extended the lost or stolen deed principles to other documents or instruments by holding that "[t]he proponent of a lost or missing instrument must prove its existence and contents with clear and conclusive evidence." *Id*. at 130, 785 S.E.2d at 837, Syl. Pt. 2.

In the instant matter, the uncontested evidence introduced during the bench trial showed that there were two deeds prepared – the first by attorney Jarrell, and the second, at petitioner's Sandy M.'s request, by attorney Lycan. The first deed, which was not executed, was admitted into evidence without objection and contained a full description of the disputed property that the father intended to convey to the respondent. The uncontroverted evidence also showed that the second deed, which was prepared by attorney Lycan, "conveyed, from [the father] to [the respondent], the same property description as the deed prepared by Attorney Donald Jarrell." The respondent also introduced evidence

17

of a property description of the disputed property and survey map of the property drafted by the Wayne County Surveyor Randy Thompson that matched the property descriptions in both deeds.  The respondent also testified that he and the father walked the disputed property together and placed stakes into the ground delineating the property boundaries.

The undisputed evidence further showed that the respondent and the father went to the office of attorney Lycan together when the second deed was ready; that the father executed the deed after reviewing it; that the deed was notarized; and that the respondent had possession of the deed after the father executed it, but left it with Ms. Harrison in response to her suggestion that she take the deed to have it recorded.  The respondent testified that he paid attorney Lycan for his services, including the cost and fees associated with recording of the deed.

Thereafter Ms. Harrison called Sandy M. and told her that the executed deed was at attorney Lycan's office.  Cherry S. testified that she and Sandy M. retrieved the deed from the attorney's office before it was recorded.  She stated that she saw the executed deed, which then disappeared despite assurances made to the respondent that it was being held in safekeeping with the father's will.

Based on this evidence, the circuit court determined that the respondent

> established the execution, contents, and loss of the deed conclusively. The evidence was clear and strong on all of the required elements. Additionally, the Defendants did not

18

present any witnesses or evidence to contradict Plaintiff's evidence. Defendants did not object to the presentment of this evidence by Plaintiff. Therefore, the Court FINDS that Plaintiff is GRANTED title to the subject property under the theory of lost document.

We find no error in the circuit court's factual findings or conclusions of law in regard to the respondent's right to title in the disputed property based on an executed and notarized deed between the father and the respondent that was later lost or stolen. The circuit court also did not err in the legal description of the disputed property as set out in detail in the circuit court's order entered December 14, 2021. Accordingly, we affirm.

## IV. Conclusion

For the foregoing reasons, the circuit court's order is hereby affirmed.

Affirmed.

19