**RAYMOND, COLESAR, GLASPY & HUSS, P.C., Plaintiff–Appellee,**

v.

**ALLIED CAPITAL CORPORATION, Defendant–Appellant.**

No. 91–2193.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1992.

Decided April 13, 1992.

See also 761 F.Supp. 423.

---

**2.** The plaintiff was asked to read the option before he accepted it. He testified that he did read it at the time.

Allen Scott Rugg, Kutak, Rock & Campbell (Thomas J. Kenny, on brief), Washington, D.C., for defendant-appellant.

John Daniel Epps, LeClair, Ryan & Joynes (Mary Lloyd Sinnott, on brief), Richmond, Va., for plaintiff-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, ERVIN, Chief Judge, and NIEMEYER, Circuit Judge.

POWELL, Associate Justice:

The question presented in this diversity case is whether the district court correctly instructed the jury with respect to the law of quantum meruit. As we find no error in the court's instructions, we affirm the judgment below.

I

Appellant is Allied Capital Corporation (Allied), a venture capital firm. Appellee is Raymond, Colesar, Glaspy & Huss, P.C. (Raymond, Colesar), an accounting firm located in Richmond, Virginia. In January 1990, Allied requested Raymond, Colesar to perform an audit, among other services, for a small Maine company in which Allied had invested $4.5 million. The Maine company was Consolidated Auto Recyclers, Inc. (CAR). Allied had employed Raymond, Colesar before, and in this instance it requested the audit in order to monitor its investment in CAR and to attract other investors to CAR. Allied allegedly ensured Raymond, Colesar that it would be paid for its work.

Raymond, Colesar provided the requested accounting services from February to August 1990. It sent the bills for its services—seven altogether—to CAR. CAR in turn paid six of these bills. Before Raymond, Colesar was able to complete the audit, CAR filed for bankruptcy protection and relief under Chapter 11 of the Bankruptcy Code. The accounting firm sought to collect the remaining charges in bankruptcy court. But thus far it has been unsuccessful in doing so.

Raymond, Colesar then sought to collect the unpaid bills from Allied. On November 21, 1990, it filed a four-count diversity complaint against Allied seeking recovery under four alternative theories: breach of contract, breach of guarantee, promissory estoppel, or quantum meruit. The district court rejected, by way of directed verdict, Raymond, Colesar's guarantee and promissory estoppel claims. At the conclusion of the trial on the remaining two counts, the jury rejected Raymond, Colesar's express contract claim, but granted relief on its quantum meruit claim. The jury awarded the accounting firm $135,688.96 in damages.

Allied moved for judgment notwithstanding the verdict or, in the alternative, for a new trial, arguing that the district court misstated the law of quantum meruit in its instructions to the jury. Rejecting this contention, the district court denied the motions. Allied appealed.

II

Quantum meruit (translated: "as much as deserved") is an equitable doctrine

premised on the notion that one who benefits from the labor of another should not be unjustly enriched. *Kern v. Freed Co.*, 224 Va. 678, 299 S.E.2d 363, 363–64 (Va.1983). To establish a right to relief on this basis under Virginia law, the claimant must show that (i) he rendered valuable services, (ii) to the defendant, (iii) which were requested and accepted by the defendant, (iv) under such circumstances as reasonably notified the defendant that the claimant, in performing the work, expected to be paid by the defendant. *See Humphreys Railways, Inc. v. F/V Nils S.*, 603 F.Supp. 95, 98 (E.D.Va.1984) (citing *Marine Development Corp. v. Rodak*, 225 Va. 137, 300 S.E.2d 763 (1983)).

■ Allied does not challenge the evidentiary foundation of the jury's decision to grant quantum meruit relief. Rather, it submits that the district court should have instructed the jury differently on this issue. The instruction Allied requested—and the district court rejected—was this: "If you find by a preponderance of the evidence that Raymond, Colesar performed accounting services for [CAR] pursuant to an express contract, then you shall find for Allied." Thus, a threshold requirement for relief under this instruction would have been a jury finding that Raymond, Colesar and CAR did not enter into an express contract for the accounting services. In determining whether the court should have so instructed the jury, we must make two assumptions. First, we will assume for the sake of argument that there was an express agreement between CAR and Raymond, Colesar for accounting work. Second, we will assume in light of the jury verdict that the factual predicate for quantum meruit relief was otherwise established. That is to say, Raymond, Colesar performed accounting services for Allied, which were requested and accepted by Allied under circumstances notifying Allied that it would be expected to pay for the work.

Allied first relies on several Virginia cases to support its contention that the requested instruction should have been given. These cases share a similar fact pattern: a quantum meruit claim is filed against a party with whom the claimant has previously made an express contract on the same matter. The rule in this context is well settled. One cannot obtain quantum meruit relief from another if he has expressly delineated the contractual obligations the two will have on the subject in question. *See, e.g., Ellis & Myers Lumber Co. v. Hubbard*, 123 Va. 481, 96 S.E. 754, 760 (1918) ("It is only in the absence of an express or of an enforceable contract between parties that the law ... will, from circumstances, imply a contract between them"); *Vollmar v. CSX Transportation, Inc.*, 705 F.Supp. 1154, 1176 (E.D.Va.1989) (" 'There can be no recovery in quantum meruit where a valid express contract between the parties exists. Parties to an express contract are entitled to have their rights and duties adjudicated exclusively by its terms' ") (quoting *In re Stevenson Assoc.*, 777 F.2d 415, 421–22 (8th Cir.1985)), *aff'd*, 898 F.2d 413 (4th Cir.1990). *See also Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir.1988). This well-established rule does not advance Allied's argument, however, because the premise for it is missing here. The jury found that the parties to the implied contract—Raymond, Colesar and Allied—did not enter into an express contract on the subject in question. In short, these cases are inapposite.

Allied next cites several non-Virginia cases to support its argument, relying particularly on *G & S Business Services, Inc. v. Fast Fare, Inc.*, 94 N.C.App. 483, 380 S.E.2d 792 (1989). In *G & S*, the North Carolina Court of Appeals rejected a quantum meruit claim against the third party beneficiary of an express contract. The court determined that "where there is a contract between two parties to furnish goods and services for the benefit of a third, the third party is not liable on an implied contract or under *quantum meruit* for those goods and services." 380 S.E.2d at 795. What distinguishes *G & S* from this case is that a third party beneficiary need not request (or contract for) services; he simply receives a benefit from a contract negotiated by others. Under those

circumstances, to be sure, it is quite reasonable not to require the third party to pay for services provided gratuitously to him.* But this rule has no application here. The jury found that Allied *requested* Raymond, Colesar's accounting services under circumstances in which it was reasonable for Allied to assume that it would have to pay for them.

Nor do the other non-Virginia cases offer a compelling basis for adopting the *per se* rule Allied has proposed. In *National City Bank v. Fleming,* 2 Ohio App.3d 50, 440 N.E.2d 590, 599 (1981), for instance, the court said:

> It has long been the law of equity that a person who confers a benefit either directly or indirectly upon another in the course of performance of a contract with a third person is not entitled to compensation ... *merely* because of the failure of performance by the third party. However, where it appears from all the facts that the conferral of such benefit was the product of fraud, misrepresentation or bad faith by the party accepting and retaining such benefit, equity will imply an obligation to make payment therefor. See *Costanzo v. Stewart,* 9 Ariz.App. 430, 453 P.2d 526 (1969) (holding that a contract beneficiary may be liable in restitution where the beneficiary by his conduct induces the conferral of the benefit).

(emphasis added) (some citations omitted). Noting that the third party beneficiary "first learned of the repairs performed by [the plaintiff] after the repairs were complete" and did not induce conferral of the benefit, the *Fleming* court rejected the plaintiff's request for quantum meruit relief. *Id.* Again, by contrast, Allied requested and monitored Raymond, Colesar's provision of accounting services, and pur-

portedly assured Raymond, Colesar that it would be paid for the work. In *W & W Oil Co. v. Capps,* 784 S.W.2d 536, 537 (Tex. App.1990), the court adopted a rule similar to the one Allied has suggested but applied it only "when the plaintiff is seeking recovery from a third party *foreign* to the original contract." Even assuming the existence of an express contract between Raymond, Colesar and CAR, Allied hardly would have been deemed "foreign" to it. Allied requested this work, while the third party in *W & W Oil* did not.

Notably, several cases have rejected the rule Allied asks us to adopt. In *Peter v. United States,* 6 Cl.Ct. 768 (1984), the Court of Claims addressed a similar contention. A group of inhabitants of the Enewetak Atoll (in the Marshall Islands) brought an implied contract claim against the United States for supply of food, shelter, and supplies during their forced removal from the Atoll (for purposes of nuclear testing). The United States responded that there could be no such claim since there was "an express contract [a Trusteeship Agreement] and there cannot be an implied contract that covers the same subject matter." *Id.* at 780. The Claims Court disagreed:

> [The inhabitants'] implied contract, and the fiduciary obligations alleged to have been assumed, are readily distinguishable from the obligations [the United States] undertook in the Trusteeship Agreement with respect to the inhabitants of the occupied territory. The parties to the agreements are not the same. The Trusteeship Agreement is between the United States and the United Nations Security Council; the parties to the alleged implied contract are the United States and the people of Enewetak. The rule that the existence of an express

---

* In neither of the two cases upon which *G & S* relies did the plaintiff claim that the third party beneficiary requested, or agreed to pay for, the services rendered. *See Suffolk Lumber Co., Inc. v. White,* 12 N.C.App. 27, 182 S.E.2d 215, 216 (N.C.App.1971) ("Plaintiff affirmatively alleges ... that the material which was used in construction of [the third party beneficiary's] dwelling was furnished pursuant to an express contract between the plaintiff and [the general contractor]. It is well established where there is a contract between persons for the furnishing of services or goods to a third, the latter is not liable on an implied contract *simply* because he has received such services or goods") (emphasis added); *Vetco Concrete Co. v. Troy Lumber Co.,* 256 N.C. 709, 124 S.E.2d 905, 907 (1962) ("It is equally clear from plaintiff's evidence that the plaintiff never entered into any agreement with the [third party beneficiary] to pay for the materials it furnished Fore–Taylor Building Company").

contract preempts an implied contract has full effect *only when the parties to both contracts are the same.*

*Id.* at 780 (emphasis added). *See also Juda v. United States,* 6 Cl.Ct. 441, 454 (1984); *Avery v. Sielcken–Schwarz,* 5 N.J.Super. 195, 68 A.2d 635, 637 (1949) ("Defendant leans heavily on the rule that the existence of an express contract excludes an implied contract. That rule has full effect *only* when the parties to the express contract are the same as the parties to the action") (emphasis added) (citations omitted); 17 C.J.S. *Contracts* § 5 (1963). This authority, with which we agree, permits implied contract claims to be brought even though an express contract concerning the same subject matter exists between the claimant and a third party.

What we have said so far does not mean that a party is precluded from arguing to a jury that the existence of an express contract between A and B undermines a quantum meruit claim between A and C for those same services. To the contrary, such evidence is quite probative. It bears on whether the claimant has in fact established the elements of quantum meruit— that is, whether the defendant requested the services and whether the defendant was on notice that it would be expected to pay for them. The existence of an express contract on the subject in question would impair attempts to establish both points. Nor does this decision weaken the stringent requirements governing enforcement of guarantees. Under Virginia law, a writing is required "[t]o charge any person upon a promise to answer for the debt ... of another." Va.Code Ann. § 11–2(4) (1950). This case involves not only Allied's promise to pay but also its request for the services rendered.

In sum, Allied's argument is not supported by precedent. Much less does precedent or the rationale underlying quantum meruit require us to set forth a *per se* rule in this area, foreclosing all implied contract claims that happen to coincide with express agreements between different parties on the same subject matter. We agree with the district court's decision to reject Allied's proposed jury instructions. The judgment below is

AFFIRMED.