**COASTAL MASONRY, INC., Appellant,**

v.

**RELIANCE INSURANCE COMPANY, Appellee.**

**No. 4:03cv33.**

United States District Court, E.D. Virginia, Newport News Division.

Aug. 1, 2003.

**36**

Richard E. Biemiller, Esquire, Wolcott, Rivers, Wheary, Basnight & Kelly, PC, Virginia Beach, VA, for Appellant.

Stanley M. Salus, Esquire, Edward G. Gallagher, Esquire, Wickwire Gavin PC, Vienna, VA, for Appellee.

Debera F. Conlon, Esquire, Office of U.S. Trustee, Norfolk, VA, for U.S. Trustee.

### MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on appeal, pursuant to 28 U.S.C. § 158(a), from the United States Bankruptcy Court for the Eastern District of Virginia ("Bankruptcy Court"). Appellant Coastal Masonry, Inc. ("Coastal") appeals the orders of the Bankruptcy Court of November 12, 2002, and January 27, 2003, granting appellee Reliance Insurance Company's ("Reliance") motions for summary judgment on Coastal's cross-claim and amended cross-claim against Reliance. For the reasons stated below, the Bankruptcy Court's decisions are **AFFIRMED**.

### Factual and Procedural History

On July 30, 1999, several creditors of Systems Engineering and Energy Management Associates, Inc. ("Seema") filed an involuntary Chapter 7 petition against Seema in the Bankruptcy Court. Richard W. Hudgins ("Hudgins") was appointed trustee in bankruptcy and, on July 17, 2001, Hudgins filed an action to recover alleged preference payments made by Seema in the ninety days preceding the filing of the petition. The defendants are subcontractors and suppliers on various Seema projects, who were recipients of the alleged preferences, and Reliance, who was surety for Seema on the performance and payment bonds required by the Miller Act, 40 U.S.C. §§ 3131 *et seq*. Coastal, one of the subcontractors named in the complaint, was a subcontractor for Seema on two federal projects, the contracts for which were entered into in July, 1997. Fifteen of the subcontractor defendants, including Coastal, filed cross-claims against Reliance to recover any amount for which they were found liable to the trustee; Coastal's cross-claim was filed on January 23, 2002. Pursuant to a settlement agreement, approved by the Bankruptcy Court's order of October 1, 2002, Coastal paid to the trustee $50,000 to settle the preference claim against Coastal. After

all of the trustee's claims were settled, Reliance filed a Motion for Summary Judgment on Cross–Claims pursuant to Bankruptcy Rule 7056 and Rule 56 of the Federal Rules of Civil Procedure. Thirteen of the subcontractor defendants abandoned or conceded their cross-claims, and one cross-claim was dismissed as moot, leaving only Coastal's cross-claim. On November 12, 2002, the Bankruptcy Court granted Reliance's motion as to Count One and ordered that Coastal amend its cross-claim to clarify the issues remaining in Count Two. Coastal filed the amended cross-claim on December 10, 2002. On January 27, 2003, the Bankruptcy Court granted summary judgment on Coastal's amended cross-claim. On February 7, 2003, Coastal filed its Notice of Appeal from the November 12, 2002, and the January 27, 2003, orders. Both parties have filed briefs in the appeal.

### Standard of Review

■ On appeal, the district court reviews findings of fact made by the Bankruptcy Court for clear error. *See, e.g., Canal Corp. v. Finnman (In re Johnson),* 960 F.2d 396, 399 (4th Cir.1992). Conclusions of law are reviewed *de novo. Id.* Pursuant to Bankruptcy Rule 7056, Rule 56 of the Federal Rules of Civil Procedure applies to adversarial bankruptcy proceedings. Thus, as with summary judgment in a district court proceeding, summary judgment in a bankruptcy proceeding is appropriate only when a court, viewing the record as a whole, finds that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,* 763 F.2d 604, 610 (4th Cir.1985). A party may not rest on the pleadings alone, but must instead show that "specific, material facts exist that give rise to a genuine triable issue." *Hagan v. McNallen (In re McNallen),* 62 F.3d 619, 623–24 (4th Cir.1995).

### Analysis

Coastal's cross-claim consists of two counts. Count One is a claim on the Miller Act bond; Count Two seeks recovery from Reliance based on theories of unjust enrichment or quantum meruit. As to Count One, Reliance asserts that Coastal failed to file a timely suit under the Miller Act and is therefore prohibited from recovery. Alternatively, Reliance alleges that Coastal executed a waiver of its rights against Reliance as Seema's Miller Act surety. As to Count Two, Reliance asserts that recovery for the cross-claim is not available under the theories of unjust enrichment and quantum meruit.

### Count One

■ In Count One of the cross-claim, Coastal seeks recovery under the Miller Act of the $50,000 that it paid to the trustee to settle the preference claim against it. Coastal contends that Reliance is responsible for this payment pursuant to the bonds that it issued to Seema as required by the Miller Act, 40 U.S.C. § 3133(b)(4). Reliance contends that Coastal failed to file its Miller Act claim within the one-year statute of limitations set out in 40 U.S.C. § 3131(b), and that it cannot therefore pursue the claim. Reliance also contends that Coastal executed a waiver of its rights under the Miller Act in Paragraph 12(c) of each of the subcontracts in question. This paragraph, which is identical in both contracts, reads as follows:

> The Subcontractor agrees that all other claims not included in subparagraphs (a)

or (b) above shall be litigated in the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division. The parties hereto expressly consent to the jurisdiction and venue of said Courts. *This remedy shall be the Subcontractor's sole and exclusive remedy in lieu of any claim against SEEMA's bonding company pursuant to the Miller Act, 40 U.S.C. 270 or any other procedure or law, regardless of the outcome of the claim.* (Subcontract No. 970043–01 and Subcontract No. 968512–17 at 12(c), attached as Exhibits A & B to First Amended Cross–Claim of Coastal Masonry) (emphasis added). Coastal argues that Reliance cannot enforce the waiver at issue, as it is not a party to the contract, and was not an intended beneficiary of the contract. Instead, Coastal argues, the clause was intended to protect insiders at Seema, as bonding companies often require indemnity agreements in conjunction with such bonds. The Bankruptcy Court found that the intent of the clause was to prevent claims against the bonding company, because preventing such claims was the only way to effect the purpose of the clause. The Bankruptcy Court further reasoned that the only way to enforce such a clause was to allow the bonding company to assert it as a defense to any claims against it. Therefore, Reliance, as the bonding company, was an intended beneficiary of the waiver, and as such could enforce it.

■ This court finds the reasoning and result of the Bankruptcy Court to be correct. Paragraph 12(c), quoted above, is a clear waiver of the right to assert a claim against the bonding company under the Miller Act. The ability to so waive rights under the Miller Act has been recognized, and such waivers have been upheld by district courts and the Fourth Circuit. *See, e.g., United States ex. rel. Nova Enters., Inc. v. Reliance Insurance Co.,* No. 92–1374, 1992 WL 296346, *1–*2, 1992 U.S.App. LEXIS 27503, *3–*4 (4th Cir. October 16, 1992) (upholding a waiver of the right to sue under the Miller Act on a payment bond); *United States ex. rel. Pembroke Steel Co. v. Phoenix Gen. Constr. Co.,* 462 F.2d 1098, 1099 (4th Cir. 1972) (recognizing that the right to sue can be waived "by clear and express provisions in the subcontract"); *United States ex. rel. Zanahary Group, Inc. v. Systems Eng'g and Energy Mgmt. Assocs., Inc.,* Civil Action No. 2:98cv1431, *9 (E.D. Va. April 18, 2000) (upholding a waiver of the right to sue under the Miller Act on a payment bond). In both *Nova Enterprises* and *Zanahary Group,* the bonding company asserted the clause as a defense against the Miller Act claim. In both cases, the court found the waiver to be valid. Though neither court engaged in a discussion of the third-party beneficiary status of the bonding company, the result of the cases confirms that both courts found the bonding company to have standing to assert the waiver.

■ Arguably, such waivers leave the subcontractor in a difficult position in cases such as the one before the court, where the prime contractor is bankrupt and a waiver prevents recovery from the bonding company. Moreover, Coastal contends that the subcontractors signing the agreements never understood them to be waivers of the right to pursue claims under the Miller Act.[1] However, perhaps in response to situations such as the one in which Coastal finds itself, Congress has raised the bar for valid waivers of Miller

1. The court is at a loss to understand what the subcontractors thought the clauses did, as the waiver of the Miller Act claims is in the plain language of the clause.

Act claims. In 1999, the President signed into law the Construction Industry Payment Protection Act of 1999, Pub.L. No. 106.49, which made several changes to the Miller Act. One of these changes added a new paragraph to what was then 40 U.S.C. § 270b; that new paragraph states that "[a]ny waiver of the right to sue on the payment bond required by this Act shall be void unless it is in writing, signed by the person whose right is waived, and executed after such person has first furnished labor or material for use in the performance of the contract." [2] 40 U.S.C. § 3133(c)(1999) (formerly 40 U.S.C. § 270b(c)). This revision does not protect Coastal, however, because, as the court in *Zanahary Group* explained, the amendment does not apply retroactively to bonds and waivers furnished prior to the legislation. *See Zanahary Group*, Civil Action No. 2:98cv1431 at 3 n. 1.[3]

### Count Two

In Count Two of the amended cross-claim, Coastal seeks recovery from Reliance for the $50,000 preference payment it paid the trustee under theories of unjust enrichment or quantum meruit. The Bankruptcy Court, in the hearing on the original summary judgment motion, questioned the factual situation presented for Count Two in the original cross-claim. By order of the court, Coastal submitted the amended cross-claim on December 10, 2002, modifying the information set out in Count Two. The Bankruptcy Court, on January 27, 2003, granted Reliance's re-

newed summary judgment motion as to Count Two of the amended cross-claim, which was the only remaining count.

The Bankruptcy Court's request that Coastal submit an amended complaint had its genesis in discussions on Reliance's assertions that the theories of quantum meruit and unjust enrichment offered no relief in the situation before the court. At the time the original cross-claim was filed, Coastal. had not, of course, entered into any settlement with Seema, and the factual allegations regarding the payment alleged to be owed to Coastal by Reliance in the cross-claim were somewhat nonspecific. Additionally, the Bankruptcy Court was unclear on the timing as far as Reliance's involvement in the projects and any promise of payment made by Reliance to Coastal. Three paragraphs in the original cross-claim were particularly at issue and read as follows:

12. Coastal continued to work on the projects until it could no longer afford to do so and then stopped.

13. Subsequently, defendant Reliance stated to Coastal that in consideration for Coastal returning to work on the projects, Reliance would make payment to Coastal for all prior outstanding charges and also made assurances of payment for future materials and services provided.

14. In consideration of full payment for the prior work and such assurances of future payments by Reliance,

2. Of course, as Reliance points out in its brief, the very necessity for such revision speaks to the understanding that prior law was less restrictive in the allowance of such waivers.

3. Because it found the contract waiver valid, the Bankruptcy Court declined to "wade into" the issue of equitable tolling of the statute of limitations (Tr. of Hearing of Nov. 12, 2002, at 26), which Coastal raised in defense

of Reliance's argument that the one-year statute of limitations bars Coastal's Miller Act claim. The contract waiver does dispose of Count One of the cross-claim, and this court agrees with the Bankruptcy Court that it is unnecessary to address the issue of the expiration of the one-year statute of limitations and the equitable tolling thereof.

Coastal did return to work and provided additional material and services pursuant to the Subcontracts. (Amended Answer, Affirmative Defenses and Cross–Claim of Coastal Masonry, Inc. at ¶¶ 12–14.) During the hearing, the bankruptcy judge questioned whether Coastal was seeking payment for any work it had completed directly at the behest of Reliance. (Tr. of Hearing of Nov. 12, 2002, at 19–20.) Coastal's attorney proffered that, to the best of his knowledge, that was not the case, as the sole recompense sought at this point was the $50,000 preference payment made to Coastal by Seema, which Coastal had been required to repay to the trustee. (*Id.* at 20.) The bankruptcy judge, therefore, allowed Coastal to amend its cross-claim to reflect more accurately the post-settlement situation. The amended cross-claim clarifies the claims of Coastal, removing any intimation that Reliance had solicited the work for which Coastal received the $50,000 preference payment or that Reliance had made any promise to pay Coastal for that work. Rather, the amount that Coastal seeks to recover is based on payments made by Seema to Coastal for work it had completed, and these payments were made prior to the filing of the bankruptcy. However, under the terms of the settlement, Coastal agreed to repay to the trustee the $50,000 that it received from Seema during that period. There is no allegation in the amended cross-claim that Reliance solicited any of the work for which the original payment was made, nor is there any indication that Reliance made any representations to Coastal regarding reimbursement. Rather, Coastal argues that Reliance, as the surety, benefitted because Coastal continued to work on the projects, thus leaving less work for Reliance to complete upon the intervention of the surety under the performance bonds. Coastal also contends that Reliance knew it was completing the work and expected to be paid for it, and that Reliance did not object to Coastal's continued fulfillment of the contract.

 In its brief, Coastal argues that this court has broad equitable power, and that it should exercise that power in fashioning relief. Coastal pursues this equitable relief under the theories of unjust enrichment and quantum meruit; however, it fails to either set forth the standards for such relief, or provide any citation to case law regarding these specific equitable arguments. Rather, it relies on the broad theory of equity. Such reliance is misplaced. There are standards to apply, even under equitable theories. An action for unjust enrichment under Virginia law " 'will lie whenever one has the money of another which he has no right to retain, but which *ex aequo et bono* he should pay over to that other.' " *Federal Ins. Co. v. Smith,* 144 F.Supp.2d 507, 523 (E.D.Va. 2001) (citation omitted). Therefore, such a claim requires proof that (1) the plaintiff had a preexisting right to the money, and (2) the defendant justly should not retain the money. *Id.* In the matter at hand, Coastal does have a preexisting right to the money, in that it was payment made for services rendered to Seema. However, Coastal cannot meet the second criteria, because Reliance does not have, and has not at any point had, the funds in question. Coastal attempts to meet this requirement through its argument that Reliance, as the surety, effectively benefitted dollar-for-dollar because of the work Coastal completed. However, the work for which Coastal seeks payment now is work that it completed for Seema, at Seema's request, as it was under the contract with Seema. Moreover, Coastal was paid by Seema for that work. The loss came at a later stage, when the settlement with the trustee, entered into by Coastal, required repayment

to the trustee of these funds. Because the criteria for unjust enrichment cannot be met, Coastal's claim for equitable relief under this theory must fail.

For similar reasons, Coastal's argument that it should recover under the theory of quantum meruit also fails. In order to state a claim under this theory, the claimant must prove that "(i) he rendered valuable services, (ii) to the defendant, (iii) which were requested and accepted by the defendant, (iv) under such circumstances as reasonably notified the defendant that the claimant, in performing the work, expected to be paid by the defendant." *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.,* 961 F.2d 489, 491 (4th Cir.1992). Coastal did render a valuable service, as evidenced by the original payment made to the company by Seema. However, that service was rendered to Seema, not to Reliance. Furthermore, under the amended claim it is clear that Reliance did not request that Coastal perform this work; the work was performed at Seema's behest. Coastal again argues the benefit received by Reliance, in that it did not have to expend funds to have another subcontractor complete the job. Such an argument does not suffice to prevail on the quantum meruit theory, because the courts have set a far higher bar in requiring direct participation by the defendant in soliciting performance and implying an intent to compensate. *See id.* at 491–92; *see generally Kern v. Freed Co.,* 224 Va. 678, 299 S.E.2d 363 (1983).

Reliance makes one final point in its argument against the equitable remedies sought by Coastal. It asserts that allowing recovery on such bases essentially establishes that owners and sureties would always be liable to unpaid subcontractors. Though the theories advocated by Coastal are limited in situations where there are express contracts, *see Raymond, Colesar,*

961 F.2d at 491, ("[o]ne cannot obtain quantum meruit relief from another if he has expressly delineated the contractual obligations the two will have on the subject in question"), Reliance makes a valid point. Equitable remedies are designed to give relief where justice demands, but law fails to so provide. That is not the situation before the court. Coastal had an available remedy through the Miller Act, but it waived that right. Coastal cannot now circumvent the very waiver that deprives it of that remedy through an appeal to the equitable powers of this court. Based on the analysis above, this court agrees with the Bankruptcy Court and finds summary judgment appropriate as to the amended cross-claim.

### Conclusion

For the reasons stated above, the Bankruptcy Court's decisions granting summary judgment on Count One of the cross-claim and on Count Two of the amended cross-claim are **AFFIRMED**. The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Order to the parties, to the United States Trustee, and to the Bankruptcy Court.

**IT IS SO ORDERED.**