**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18–2497

JUSTIN FESSLER,

Plaintiff – Appellant,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,

Defendant – Appellee.

------------------------------

METROPOLITAN WASHINGTON EMPLOYMENT LAWYERS ASSOCIATION;
NORTH CAROLINA ADVOCATES FOR JUSTICE,

Amici Supporting Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria.  T. S. Ellis, III, Senior District Judge.  (1:18–cv–00798–TSE–MSN)

Argued:  January 29, 2020                     Decided:  May 14, 2020

Before GREGORY, Chief Judge, KING, and QUATTLEBAUM, Circuit Judges.

Vacated and remanded by published opinion.  Chief Judge Gregory wrote the opinion, in
which Judge King and Judge Quattlebaum joined.

**ARGUED:**  Mark Russell Sigmon, SIGMON LAW, PLLC, Raleigh, North Carolina, for
Appellant.  Justin Robert Barnes, JACKSON LEWIS P.C., Atlanta, Georgia, for Appellee.

**ON BRIEF:** Jeremy R. Williams, Matthew E. Lee, WHITFIELD, BRYSON & MASON, LLP, Raleigh, North Carolina, for Appellant. Matthew F. Nieman, JACKSON LEWIS P.C., Reston, Virginia, for Appellee. James Edward Rubin, RUBIN EMPLOYMENT LAW FIRM, P.C., Rockville, Maryland, for Amicus Metropolitan Washington Employment Lawyers Association. S. Luke Largess, Cheyenne N. Chambers, TIN FULTON WALKER & OWEN, PLLC, Charlotte, North Carolina, for Amicus North Carolina Advocates for Justice.

_____

GREGORY, Chief Judge:

Justin Fessler brings this suit against his former employer, International Business Machines Corporation ("IBM"), for unpaid commissions. Fessler alleges that IBM unlawfully "capped" his sale commissions despite representing to him that his commissions would be uncapped. The district court dismissed his claims on the basis that the Incentive Plan Letters ("IPLs") that IBM presents to its employees foreclosed any reasonable expectation that Fessler would receive additional commissions. For the reasons explained below, we find that Fessler adequately states claims for fraud, constructive fraud, unjust enrichment, quantum meruit, and punitive damages.[1] We thus vacate the judgment of the district court and remand the case for further proceedings consistent with this opinion.

I.

Fessler joined IBM in October 2008 and started working as the company's inside sales information specialist for the United States Federal Government in 2009. His compensation consisted of both a base salary and commissions. Fessler had three commission plans that are relevant here: the first was in effect from January 1, 2016 through June 30, 2016; the second, from January 1, 2017 through June 30, 2017; and the third, from July 1, 2017 through December 21, 2017. A part of each written commission

---

[1] Fessler does not appeal the district court's dismissal of his breach of contract claim.

3

plan was sent to Fessler as an IPL.[2]  The plans contained several disclaimers that were in large part similar to each other.  First, the IPL contained a "Right to Modify or Cancel" disclaimer.  In the first half of 2017, the IPL stipulated:

> The Plan does not constitute an express or implied contract or a promise by IBM to make any distributions under it.  IBM reserves the right to adjust the Plan terms, including, but not limited to, changes to sales performance objectives, assigned territories or account opportunities, applicable incentive payment rates or similar earnings opportunities, or to modify or cancel the Plan, for any individual or group of individuals, including withdrawing your accepted Incentive Plan Letter if your incentive eligibility status changes.

J.A. 815.  The IPLs for the first half of 2016 and the second half of 2017 contained similar disclaimers.  However, unlike the IPLs from 2017, the IPL from 2016 stipulated that "IBM reserves the right to adjust the Plan terms . . . up until any related payments have been earned under the Plan terms."  J.A. 815.

The IPLs also contain disclaimers about "Adjustments for Errors."  Specifically, each IPL provided:

> IBM reserves the right to review and, in its sole discretion, adjust or require repayment of incorrect incentive payments resulting from incomplete incentives processes or other errors in the measurement of achievement or the calculation of payments, including errors in the creation or communication of sales objectives.  Depending on when an error is identified, corrections may be made before or after the last day of the full-Plan period, and before or after the affected payment has been released.

J.A. 815.

Finally, the IPLs contained a disclaimer providing for "Review of a Specific Transaction."  For example, the IPL for the first half of 2017 stated:

---

[2] The district court considered the IPLs attached to IBM's Motion to Dismiss because they were integral to the Complaint and Fessler did not dispute their accuracy.

4

> If a specific customer transaction has a disproportionate effect on an incentive payment when compared with the opportunity anticipated during account planning and used for the setting of sales objectives, or is disproportionate compared with your performance contribution towards the transaction, IBM reserves the right to review and, in its sole discretion, adjust the incentive achievement and/or related payments.

JA 816. The other two IPLs contained similar provisions.

Around the time Fessler received each IPL, IBM also provided him with PowerPoint presentations describing the terms of the compensation plan and including information that was not in the IPLs. The PowerPoint presentations noted, no less than six times, that Fessler's payments and earnings opportunities were uncapped. Fessler alleges that these representations were repeated in sales meetings and by IBM managers. As Fessler puts it, these were part of "IBM's official policies," which "provide that sales representatives['] commissions may be adjusted to correct errors, but their commissions may not be arbitrarily capped for the purpose of limiting the employee's earnings." J.A. 6.[3]

Fessler was not paid his expected commission on three separate occasions. First, Fessler was paid $50,000, rather than the expected earned commission of $258,200, from an $8,900,000 deal closed in 2016 with the United States Census Bureau. The commission he received was not paid immediately. When Fessler approached his manager about the delay, she told him that because the deal was over $5,000,000, it went through an internal review process. Fessler alleges that neither his first nor his second line manager were

---

[3] Fessler abandoned his claims based on the statements of IBM executives on appeal. Fessler Reply Br. at 9 ("Given the holdings in *Vinson*, *Beard*, and *Swafford*, and given that Fessler does not need the claim based on oral representations, he will voluntarily forego the oral misrepresentation claim to narrow the issues on appeal.")

consulted as part of this process. And after the review, Fessler was informed that he was credited with only a fraction of the revenue due to his contribution to the deal. Yet the reviewer never explained what they understood Fessler's contribution to be, and no other sales representative was credited with the revenue that was not credited to Fessler. According to Fessler, both of his managers believed that his contribution was significant, and they did not understand why his commission was arbitrarily capped by IBM.

Second, in May 2017, Fessler was paid about $30,000, rather than the expected earned commission of $100,000, on a $2,000,000 deal with the Department of Defense Special Operations Command. IBM explained that this account was part of a special new program, a Target Account Absolute Plan, which allocated 3.5% commission to all sale representatives involved in a sale of IBM products and services to the Department of Defense. But Fessler claims that he was not made aware of this commission structure until after closing the deal with the Department of Defense. He also alleges that this commission was inconsistent with numerous representations IBM made to him.

Finally, in December 2017, Fessler closed a $5,200,000 deal with the United States Customs and Border Protection Agency. Fessler claims that his commission was once again capped by IBM, which refused to pay him any commission for this deal. When questioned, IBM officials told Fessler that he would not be compensated for this account because it was removed from his responsibility. But Fessler claims that he was responsible for all federal government accounts and it was never explained to him that the account was removed from his responsibility. Had Fessler known IBM was not going to compensate

6

him for his efforts, he alleges, Fessler would not have worked on this account or closed this $5,200,000 deal.

Fessler alleges that, since leaving IBM, he has learned that IBM has a history of capping commissions on large deals. Fessler further alleges that although the sales field in which he works is highly competitive and most employers do not cap commissions, IBM has a practice of telling its salespeople that their commission will not be capped—and then capping high-achievers after the fact. This practice, Fessler claims, allows IBM to "have its cake and eat it too." Fessler Br. at 3. If IBM were to tell its salespeople that their commissions will be capped, its recruitment efforts would be severely hampered. For this reason, IBM engages in a practice where it tells salespeople that their commissions will be uncapped, in written documents such as the PowerPoint presentation and through oral communication by IBM executives, and then caps certain high-commission deals.

Accordingly, Fessler commenced this action against IBM, alleging that IBM owes him unpaid commissions related to the three deals above. Fessler brought claims for (1) breach of oral and/or implied contract; (2) quantum meruit; (3) unjust enrichment; (4) fraudulent misrepresentation; (5) negligent misrepresentation; and (6) punitive damages. IBM moved to dismiss Fessler's claims on the ground that the IPL foreclosed each claim. After hearing oral arguments on the Motion to Dismiss, the district court agreed with IBM and granted the motion in its entirety.

The district court first addressed Fessler's breach of oral/implied contract claim. The district court found that no meeting of the minds occurred because IBM lacked the intent to obligate itself to pay Fessler uncapped commissions. Therefore, there was no

7

mutual assent and Fessler's claim for breach of oral/implied contract failed as a matter of law.

The district court next dismissed Fessler's quantum meruit and unjust enrichment claims. The court noted that both theories required Fessler to show that IBM reasonably expected to pay Fessler additional commissions beyond what he had received. However, the district court found that the IPLs foreclosed any guarantee of commission payments. Because the IPLs stated that IBM could modify or eliminate Fessler's commissions, the district court concluded, neither IBM nor Fessler could have reasonably expected that IBM would pay Fessler additional commissions. Thus, the district court rejected Fessler's quantum meruit and unjust enrichment claims.

The district court then moved on to dismiss Fessler's fraud and constructive fraud claims. The court noted that both theories require Fessler to show that he reasonably relied on IBM's false representations. However, the district court again relied on the IPLs and found that they precluded Fessler's claim. Because the IPLs warned Fessler that IBM could modify his commission payments, the court concluded, reliance on any other misrepresentations by IBM was unreasonable as a matter of law. Consequently, the district court concluded that Fessler's fraud and constructive fraud claims must be dismissed.

Finally, the district court noted that Fessler's claim for punitive damages was derivative of his fraud claim. Because the court rejected his fraud claim, it dismissed his claim for punitive damages as well. Fessler filed a timely appeal.

8

## II.

We review de novo a district court's order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *E. Shore Markets., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Our inquiry is to determine whether the facts alleged in the plaintiff's complaint are legally sufficient to state a claim upon which relief can be granted. *Id.* (internal citations omitted). "Because only the legal sufficiency of the complaint, and not the facts in support of it, are tested under a Rule 12(b)(6) motion, we assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Id.* (internal citations omitted). To survive a motion to dismiss, we require "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.

As a threshold matter, the parties disagree on whether this Court's prior decision in *Jensen v. IBM*, 454 F.3d 382 (4th Cir. 2006), is controlling here. In *Jensen*, the plaintiff sued IBM for breach of contract after IBM paid him a commission that was less than expected on a large deal. *Id.* In doing so, the plaintiff attacked a 200% rule that reduced his commission for any deal greater than 200% of his quota. *Id.* at 386. We affirmed the district court's decision to grant summary judgment for IBM on the grounds that "the [IPL] did not create an enforceable contract obligating IBM to pay the commissions." *Id.* at 384. In essence, the question this Court had to consider was whether the IPL in that case created an enforceable contract obligating IBM to pay the expected commissions. As we put it,

9

"we view this case as an effort by Jensen to create an enforceable contract out of a policy that expressed IBM's contrary intentions." *Id.* at 390. Because of the disclaimers present in the plaintiff's IPLs, we reasoned, the "descriptions of the plan did not amount to an offer to enter into a contract." *Id.*

IBM asserts that *Jensen* "addressed a nearly identical situation" and claims that Fessler cannot distinguish the present case. IBM Br. at 17. Because this Court has already held that the disclaimers in IBM's incentive plans permit a cap on commissions, IBM argues, Fessler's case should be dismissed.

Fessler, on the other hand, argues that *Jensen* is inapposite. Fessler points out that *Jensen* simply affirmed the district court's dismissal of a single claim: breach of contract. In addition, *Jensen* did not address any of the claims that Fessler asks our Court to address here, and there was no allegation of a PowerPoint providing information contrary to the IPL. Therefore, Fessler argues, *Jensen* does not control this case.

We hold that *Jensen* does not foreclose Fessler's claims. Fessler does not ask us to consider whether IBM breached an enforceable contract by failing to pay him the expected commissions. Indeed, both parties concede that the IPLs are not enforceable contracts. The equitable causes of action that Fessler raises here were not raised, and therefore not considered, in *Jensen*. Put simply, the sole claim raised in *Jensen* (breach of contract) is not a claim brought here, and the claims raised here (fraud, constructive fraud, unjust enrichment, quantum meruit) were not brought in *Jensen*.

There are other significant differences. It is important that our decision in *Jensen* occurred at the summary judgment phase, where the plaintiff's claim was assessed on the

10

sufficiency of the factual support he provided. Here, IBM faces a higher burden to show that Fessler failed to state a claim upon which relief can be granted. Moreover, the allegations that Fessler bases his claims on—PowerPoint presentations and Fessler's lack of knowledge of any previous capping by IBM despite working there since 2008—were not allegations we considered in *Jensen*. Indeed, in a somewhat ironic twist of fates, IBM now defends itself against the above allegations by arguing that the (nearly identical) IPLs that it successfully argued were nonbinding in *Jensen* preclude Fessler's claims as a matter of law.[4] Of course, IBM can switch its position on the importance of the disclaimer language in the IPLs. But it cannot rely on our holding in *Jensen*—that the district court was correct to conclude at the summary judgment stage that the IPLs did not create an enforceable contract—to show that the IPLs preclude Fessler from pursuing the claims he raises here. We decline the invitation to hold that *Jensen* forecloses Fessler's claims.

IV.

This brings us to the claims Fessler asks us to address on appeal. Fessler first argues that the district court erred in dismissing his claims for fraudulent misrepresentation and

---

[4] Note that, as claims about an implied contractual relationship, Fessler's claims for unjust enrichment and quantum meruit are dependent on the IPLs not binding parties in a way that an express contract would. *See Nedrich v. Jones*, 429 S.E.2d 201, 207 (Va. 1993) (opinion of Keenan, J.) ("The law will not impose an implied contractual relationship upon parties in contravention of an express contract.") (internal citation omitted).

11

constructive fraud.[5] The parties agree that Virginia law governs this diversity suit. *See Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 108 (1945) ("[A] federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State."). Under Virginia law, a plaintiff seeking to recover for fraud must allege: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 477 (4th Cir. 2006) (citing *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 346 (Va. 1998)). A claim for constructive fraud requires the same allegations, except instead of pleading that the false representation was made intentionally and knowingly, "the plaintiff is only required to plead that the false representation was made innocently or negligently." *Sales v. Kecoughtan Hous. Co.*, 690 S.E.2d 91, 94 (Va. 2010). In addition, "[a]n action based on fraud may not be predicated on unfulfilled promises or statements about future events." *Id.* Further, "[i]n order to prove reliance, a plaintiff must demonstrate that its reliance upon the representation was reasonable and justified." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999) (internal citations omitted).

The district court provided a single rationale for dismissing Fessler's fraud and constructive fraud claims: the absence of reasonable reliance. IBM argued, and the court

---

[5] The district court noted that Fessler originally captioned his claim "negligent misrepresentation," but all parties agreed that Fessler intended to assert a claim for constructive fraud. J.A. 828 n.14.

agreed, that the disclaimers in the IPLs precluded Fessler from showing that his reliance on IBM's other representations was reasonable. Because the IPLs clearly stated that they did not constitute a promise and IBM reserved the right to adjust the plan's terms, the argument goes, Fessler could not have reasonably expected to receive a payment greater than he received.

We hold that the district court erred in its determination that Fessler's reliance was unreasonable as a matter of law. Typically, reasonable reliance is reserved for the trier of fact to determine. *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 834 (4th Cir. 1999) (citing *Miller v. Premier Corp.*, 608 F.2d 973, 982 (4th Cir. 1979) (reasonableness of reliance is question of fact for jury to decide)). However, when determining the legal sufficiency of a complaint, "we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). In his Complaint, Fessler alleges that he reasonably relied on the PowerPoint presentations that repeatedly informed him that his commissions would be uncapped. Fessler also claims that, although he has worked with IBM since 2008, he has no knowledge of IBM ever capping a commission before he encountered the situation in 2016. Under these circumstances, we find that Fessler alleges more than enough facts at this stage such that a reasonable jury could conclude that Fessler was justified in relying on such representations.

The only ground IBM provides for claiming that Fessler's reliance was unreasonable is that the IPLs contained disclaimers warning Fessler that IBM reserved the right to adjust his payment scheme. Yet we have previously held that "a contractual

13

disclaimer of reliance is not a prophylactic against a claim of fraud." *Hitachi*, 166 F.3d at 630. Indeed, Virginia law maintains that "even when a party to a contract drafts the written document, he is not estopped to show that its terms were induced by the other party's fraud." *George Robberecht Seafood, Inc. v. Maitland Bros. Co.*, 255 S.E.2d 682, 684 (Va. 1979).[6] Although this principle is commonly appealed to in cases where a party's misrepresentations induce someone to contract, it supports our holding here. If a disclaimer does not automatically bar the drafter of a contract from raising a fraud claim, we see no reason to hold that it serves as an automatic bar when presented in the noncontractual IPLs at issue here. A jury could, for example, justifiably find that IBM made inconsistent representations and, given Fessler's past dealings with IBM, it was reasonable to rely on the statements in the PowerPoint presentation or those made by IBM's executives. Alternatively, a jury could find that since the representations that his commission would be uncapped were presented subsequent to Fessler receiving IPLs, it was reasonable for Fessler to understand them as adjustments to the plan's terms. Regardless, we do not accept IBM's argument that Fessler was required to rely on the nonbinding IPL and ignore all

---

[6] This feature of Virginia law shows why IBM's suggestion that we follow the Eleventh Circuit's unpublished decision in *Middleton v. Int'l Bus. Machines Corp.*, 787 F. App'x 619, 621 (11th Cir. 2019), is misguided. There, the Eleventh Circuit relied on established Georgia law that "the mere presence of a disclaimer, regardless of whether or not the plaintiff saw it, can render . . . reliance unreasonable." *Id.* at 622. (internal citations and quotations omitted). Since Virginia law does not automatically preclude reasonable reliance in the presence of a disclaimer, *Middleton* is inapposite. *Cf. Swafford v. Int'l Bus. Machines Corp.*, 408 F. Supp. 3d 1131, 1148 n.4 (N.D. Cal. 2019) (explaining why *Middleton*'s principle could not be applied to California law).

other representations by IBM officials and his past experiences with the company. Therefore, we reject IBM's claim that the IPLs made Fessler's reliance on the misrepresentations unreasonable as a matter of law.[7]

The district court considered two other arguments by IBM and rejected them, yet IBM repeats these arguments on appeal. First, IBM argued that Fessler failed to plead his fraud claim with the particularity required by Federal Rule of Civil Procedure 9(b). However, the district court found that Fessler adequately alleged the particular time, place, content, and identity of the person making the false representations. J.A. 825; *see also Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019) ("To satisfy Rule 9(b), a plaintiff must plead the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.") (internal citations and quotation marks omitted). The district court's findings comport with our holding on appeal. Fessler alleged that around the time the IPLs were presented to him (time), false representations were made in the PowerPoint presentations and at sales meetings (place) that his "[e]arning[] opportunities remain uncapped" (content) by IBM and its executives (identity). J.A. 6; J.A. 825. This satisfies the requirements of Rule 9(b).

---

[7] Of course, a factfinder may not accept that Fessler's reliance on IBM's misrepresentations were equally reasonable. For example, a factfinder may justifiably conclude that although it was reasonable to rely on the initial misrepresentations, it was not reasonable for Fessler to rely on IBM's later misrepresentations. *See* Stephen King, On Writing: A Memoir of the Craft 12 (2000) ("Fool me once, shame on you. Fool me twice, shame on me. Fool me three times, shame on both of us."). However, we are satisfied that Fessler met the burden of pleading that his reliance on the misrepresentations in all three instances was reasonable and do not reject his claim as a matter of law.

15

Second, IBM argued that Fessler cannot plausibly allege the requisite intent to deceive. However, the district court found sufficient Fessler's allegations that IBM was motivated to recruit good salespeople who would not work for IBM if they knew that their commissions would be capped. Since "intent may be, and most often is, proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts," *Viney v. Commonwealth*, 609 S.E.2d 26, 29 (Va. 2005), the district court found that Fessler could plausibly prove intent to deceive. We agree with the district court. Accordingly, we reject IBM's argument that Fessler did not plead intent to deceive.[8]

In sum, we find that Fessler adequately alleged sufficient facts to permit a plausible inference that IBM committed fraudulent misrepresentation and constructive fraud.

V.

We then turn to Fessler's argument that the district court erred in dismissing his claims for unjust enrichment and quantum meruit.[9] The district court noted that "[t]he

---

[8] We also agree with the district court's conclusion that, by alleging that IBM misrepresented to Fessler that its current policy was to pay uncapped commissions, Fessler's Complaint plausibly alleges false representations not based on a promise of future action. *See* J.A. 827-28. However, because the district court does not address the issue, we do not answer the question of whether what IBM did was in fact a "capping" of Fessler's commissions. The phrase appears to be a term of art and the district court is better situated to determine whether IBM capped Fessler's commissions based on the sales industry's understanding of the term.

[9] In his briefs, Fessler claims that he no longer wishes to pursue a "claim for breach of an oral or implied contract." However, both Fessler and IBM spent significant space in their briefs, and significant time during oral arguments, discussing whether Fessler adequately alleged claims for quantum meruit and unjust enrichment—which are, in (Continued)

16

parties agree that Virginia law requires proof of the same elements to succeed on these claims." J.A. 822. Therefore, the court treated Fessler's claim for quantum meruit as coterminous with his claim for unjust enrichment and rejected them both. Although the parties disagree on whether the district court's conclusion was correct, they share common ground in contending in this Court that unjust enrichment and quantum meruit require a plaintiff to prove the same elements. *Compare* IBM Br. at 34 ("A claim for quantum meruit (an implied in fact contract) and unjust enrichment (an implied in law contract) require that the plaintiff allege the same elements"), *with* Fessler Br. at 47 (noting that "[t]o state a claim for unjust enrichment and quantum meruit, a plaintiff must allege" the same elements).

Even when the parties agree, however, we are not required to accept their wrong interpretation of law. We recognize that many courts, including this one, have been less than meticulous in separating quantum meruit and unjust enrichment. "[T]he two theories," the Virginia Supreme Court recently observed, "can easily be conflated." *T. Musgrove Constr. Co., Inc. v. Young*, No. 190180, 2020 WL 1799186, at *2 (Va. Apr. 9, 2020). While the parties do not cite any case from this Court declaring that the two theories

---

essence, claims about an "implied contract." For this reason, we find that Fessler did not intend to waive, nor did he waive, his quantum meruit and unjust enrichment claims. Fessler merely waives his breach of oral contract claim, which is Count I of his Complaint. *See Marine Dev.*, 300 S.E.2d at 765 (separating a breach of oral contract claim from quantum meruit); *see also Vinson v. Int'l Bus. Machines Corp.*, No. 1:17-CV-00798, 2018 WL 4608250, at *3-7 (M.D.N.C. Sept. 25, 2018) (granting a motion to dismiss a "breach of oral and/or implied contract" claim but denying the motion regarding the plaintiff's quantum meruit and unjust enrichment claims).

17

require the same elements under Virginia law, the district court relied on a prior decision from this Court to support its conclusion that Fessler must allege the same elements to succeed on either theory. *See* J.A. 822 (citing *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 490–91 (4th Cir. 1992)).[10] Thus, the district court observed: "to succeed on either theory, Fessler must establish that (i) he 'conferred a benefit on' IBM, (ii) IBM 'knew of the benefit and should reasonably have expected to repay' Fessler and (iii) IBM 'accepted or retained the benefit without paying for its value.'" J.A. 822 (internal citations omitted). Consequently, the court concluded "Fessler's quantum meruit and unjust enrichment claims fail as a matter of law because IBM did not reasonably expect to pay Fessler additional commissions, nor did IBM promise to do so." J.A. 822.

After the district court's ruling in this case, the Virginia Supreme Court issued a decision clarifying its law regarding the two causes of action. *T. Musgrove Constr. Co.*, 2020 WL 1799186, at *2. Attempting to "disentangle the two theories," the court outlined

---

[10] Although we did not say that the two theories require proof of the same elements, we wrote: "*Quantum meruit* (translated: 'as much as deserved') is an equitable doctrine premised on the notion that one who benefits from the labor of another should not be *unjustly enriched*." *Raymond*, 961 F.2d at 490–91 (4th Cir. 1992) (emphasis added). Given the entangling of these two notions in that opinion (and the assurance from both parties that the two claims depend on proof of the same elements), it is understandable why the district court concluded that quantum meruit and unjust enrichment require a plaintiff to plead the same elements. *Cf. Baudean v. Pearson Educ., Inc.*, No. 3:14CV685, 2015 WL 3651199, at *8 (E.D. Va. June 11, 2015) ("A claim for unjust enrichment (an implied in law contract) and quantum meruit (an implied in fact contract) require that the plaintiff allege the same elements."); *Seagram v. David's Towing & Recovery, Inc.*, 62 F. Supp. 3d 467, 477 (E.D. Va. 2014) ("Virginia courts interchangeably use the terms 'quantum meruit' and 'unjust enrichment.'").

18

the requirements for a plaintiff to succeed under quantum meruit and unjust enrichment. *Id.* First, the court noted that quantum meruit, meaning "as much as one deserved," is established "[w]here service is performed by one, at the instance and request of another, and . . . nothing is said between the parties as to compensation for such service." *Id.* at *3 (internal citations omitted). Thus, "quantum meruit is available when (1) the parties contract for work to be done, but the parties did not agree on a price, (2) the compensation mentioned is too indefinite, (3) there is a misunderstanding as to the price to be paid, or, (4) in some instances, the contract is void and of no effect." *Id.* (citing *Marine Dev. Corp. v. Rodak*, 300 S.E.2d 763 (Va. 1983)). As a contract implied in fact, the measure of recovery for quantum meruit is "the reasonable value of the services provided." *Id.* (internal citation omitted).

"The cause of action for unjust enrichment," the court continued, applies when "(1) '[plaintiff] conferred a benefit on [defendant]; (2) [defendant] knew of the benefit and should reasonably have expected to repay [plaintiff]; and (3) [defendant] accepted or retained the benefit without paying for its value.'" *Id.* at *2 (citing *Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834 (Va. 2008)). Although a claim for quantum meruit requires a request for services, unjust enrichment does not. *See id.* at *3 ("When the defendant has not requested the plaintiff's services, a plaintiff's claim is for unjust enrichment."). As a

19

quasi-contract, the measure of recovery for unjust enrichment is "limited to the benefit realized and retained by the defendant." *Id.*[11]

With the benefit of the Virginia Supreme Court's clarification, we now turn back to the pleadings in this case. The district court concluded that Fessler's claim for unjust enrichment failed as a matter of law. Because of the presence of the disclaimers in the IPLs and a lack of a promise by IBM, the court determined, neither IBM nor Fessler could have reasonably expected that IBM would pay Fessler commissions greater than the commissions he received. As stated above, however, the IPLs do not contractually bind the parties with respect to the amount of commissions Fessler will receive. Fessler sufficiently alleges that given the misrepresentations by IBM and its executives, and his past dealings with the company, they both reasonably expected that IBM would pay Fessler a higher commission payment than he received.[12] This is especially true for the $5.2 million deal that Fessler closed in December 2017. When pleading this action, Fessler alleges that IBM "refused to pay him any commissions on a deal he was responsible for"

---

[11] The opinion, however, is unclear on whether quantum meruit and unjust enrichment are mutually exclusive under Virginia law, or whether quantum meruit is meant to be a subset of unjust enrichment. That is, it is not clear whether the court meant to convey that a plaintiff is barred from collecting damages for unjust enrichment when a factfinder concludes that a plaintiff proved her case for quantum meruit. Since, at a minimum, a plaintiff is allowed to plead these two claims in the alternative, we need not address the question here. *See United States v. Algernon Blair, Inc.*, 479 F.2d 638, 641 (4th Cir. 1973) ("[T]hat the complaint is not clear in regard to the theory of a plaintiff's recovery does not preclude recovery under quantum meruit . . . . A plaintiff may join a claim for quantum meruit with a claim for damages from breach of contract.").

[12] Fessler alleges that "[t]he value of the work performed for IBM by Mr. Fessler for which Mr. Fessler has not been paid is at least $350,000," but he acknowledges that "the exact amount is for the jury" to determine. J.A. 17.

and he would not have worked on the deal "had he known IBM was not going to pay him for his efforts." J.A. 10. Since Fessler alleges that IBM continuously represented to Fessler—who worked for the company since 2008—that he would receive a particular percentage of sales revenue on the deals he closed, it is not unreasonable as a matter of law to expect a similar rate of commission for the three deals at issue here. Therefore, we find that Fessler adequately alleges that he reasonably expected to receive, and IBM reasonably expected to pay him, additional commissions despite never agreeing to a contract.

Additionally, we note that unjust enrichment does not require a promise to pay under Virginia law. This follows logically from the Virginia Supreme Court's explanation that unjust enrichment does not even require a request for services. *See T. Musgrove Constr. Co.*, 2020 WL 1799186, at \*2 ("When the defendant has not requested the plaintiff's services, a plaintiff's claim is for unjust enrichment."); *see also Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 166 (4th Cir. 2012) ("Failure to allege an implicit promise to pay, however, is not necessarily fatal to an implied contract theory."). Thus, a lack of promise to pay uncapped commissions would not bar Fessler's claim. Fessler alleges sufficient facts to state a claim for unjust enrichment.

We also find that Fessler adequately alleged a claim for quantum meruit. Here, the Virginia Supreme Court's clarification is once again helpful. Unlike Fessler's unjust enrichment claim, which is not a claim about a contract he had with IBM, his claim for quantum meruit is contingent on performance "at the instance and request of another." *T. Musgrove Constr. Co.*, 2020 WL 1799186, at \*2; *id.* at \*3 n.3 (noting that a "contract implied in fact is a contract, but not an express contract" but a "contract implied in law, or

21

a quasi-contract, is not a contract"). Since Fessler is an employee of the company, IBM does not argue that the work he did was not at its request. Rather, IBM points out, and Fessler concedes, that the IPL clearly states that "The Plan does not constitute an express or implied contract or a promise by IBM to make any distributions under it." J.A. 740. By conceding that the plan "does not constitute an express or implied contract or promise by IBM to make any distributions under it," IBM argues, Fessler admits that there is no enforceable agreement to pay him additional commissions. IBM Br. at 27; 36.

This misses the point. Fessler's claim for quantum meruit is sufficient because of— not in spite of—the lack of a meeting of the minds with regard to the exact payment he would receive for his work.[13] As the Virginia Supreme Court has explained, "*quantum meruit* is available when (1) the parties contract for work to be done, but the parties did not agree on a price, (2) the compensation mentioned is too indefinite, (3) there is a misunderstanding as to the price to be paid, or, (4) in some instances, the contract is void and of no effect." *T. Musgrove Constr. Co.*, 2020 WL 1799186, at \*3 (citing *Marine Dev.*

---

[13] Thus, IBM's reliance on the Second Circuit's unpublished decision in *Kavitz v. Int'l Bus. Machines, Corp.*, 458 F. App'x 18 (2d Cir. 2012), is inapposite. Like our decision in *Jensen*, *Kavitz* was decided on the grounds that the plan never created a binding contract governing incentive compensation between the plaintiff and IBM. *Compare id.* at \*1 ("Kavitz's principal argument is that the Plan constitutes an enforceable contract between himself and IBM."), *with Jensen*, 454 F.3d at 390 ("Based on the text of the various communications about the Sales Incentive Plan, however, we view this case as an effort by Jensen to create an enforceable contract out of a policy that expressed IBM's contrary intentions."). Quantum meruit applies because the parties do not have a binding agreement with respect to the compensation to be paid. *See Marine Dev.*, 300 S.E.2d at 766 ("The court instructs the jury that an implied contract is created by law to establish justice between parties. It does not require mutual assent, but may bind a party against his will.") (internal citation omitted).

*Corp. v. Rodak*, 300 S.E.2d 763 (Va. 1983)). Here, Fessler alleges that, at a minimum, there is a misunderstanding as to the price to be paid and that the value of his work was a lot more than the compensation he received. Both parties agree that the IPLs are not contracts—that is, they do not create a binding agreement governing compensation. Thus, quantum meruit applies to permit Fessler to receive a "reasonable value of the work performed." *Id.* at \*2.[14] Since Fessler alleges enough facts to suggest that he performed work at the request of IBM and did not receive sufficient compensation for his services, he adequately states a claim for quantum meruit.

In sum, we find that Fessler adequately alleges sufficient facts to state a claim for unjust enrichment and quantum meruit.

## VI.

Finally, the district court dismissed Fessler's claim for punitive damages because it was derivative of his fraud claim. Because we find the dismissal of Fessler's fraud claim was unwarranted, we also find the dismissal of his claim for punitive damages unwarranted.

---

[14] IBM is free to defend itself against Fessler's quantum meruit claim by arguing that the amount Fessler received was a reasonable value of his work. However, since Fessler alleges that he had a hybrid arrangement that "consisted of a base salary paired with uncapped commissions," J.A. 8, it is not enough for IBM to claim that a salary alone precludes Fessler's quantum meruit claim as a matter of law.

VII.

For the above stated reasons, we find that the district court erred in dismissing Fessler's claims for fraud, constructive fraud, unjust enrichment, quantum meruit, and punitive damages. We thus vacate the judgment of the district court and remand this case for further proceedings consistent with this Opinion.

*VACATED AND REMANDED*